ORIGINAL

CV 22-3319

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MENACHEM MENDEL SCHNEORSON,

                Plaintiff,

       -against-

BARRY S. FRANKLIN & ASSOCIATES P.A.;
BARRY S. FRANKLIN; OLIVIA RETENAUER;
MARGALIT SCHNEORSON;  MICHAL H. COHEN;
COHEN & SCHNEORSON INVESMENT LLC.; FURR
AND COHEN, P.A.; ALAN R. CRANE ESQ.; JOHN
DOE #1: through #10,  and # JANE  DOE 1 through # 10,

                Defendants.

Civil Action No. CV

COMPLAINT
JURY TRIAL DEMANDED

GUJARATI, J.

SCANLON, M.J.

Plaintiff, MENACHEM MENDEL SCHNEORSON complaining of the defendants, alleges as follows:

INTRODUCTION

1.    The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeer Influenced and Corrupt Organizations Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud  although that would be troubling enough  rather, they adopted identical fraudulent blueprints as their business plans and used them to participate in systematic patterns of racketeering activity and litigation misconduct including without limitation  fraud on the court that involved the most egregious litigation misconduct imaginable.

2.    The Defendant lawyers BARRY S. FRANKLIN, OLIVIA RETENAUER, members of the bar have  deliberately planned and carefully executed scheme to defraud not only on the CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA, but also including without limitation the United States Bankruptcy Court Eastern District Of New York,

3.    The Defendant lawyers BARRY S. FRANKLIN, OLIVIA RETENAUER, members of the bar, and their client MARGALIT SCHNEORSON and her business partner MICHAEL H. COHEN, conspired to file and prosecute a multi-year fraudulent

matrimonial lawsuit, against MENACHEM MENDEL SCHNEORSON. with the primary purpose, to be utilized, as a shield to protect the individual perpetrators who knowingly devised and executed a scheme to defraud MENACHEM MENDEL SCHNEORSON, his family, businesses, individuals, government, out of millions of dollars.

4.   by way of example and not limitation the defendants fabricated a fraud scheme, by blatantly adding, three zeros to husband's total net worth $1,713.00 and change it by adding, three zeros to become $1,713,000.00.

5.   Similarly changing many other amount numbers in the matrimonial lawsuit for their benefit and to husband detriment.

6.   Their criminal, unethical and immoral conduct, including without limitation their continuing  fraud on the court that involved the **most egregious litigation misconduct imaginable**.

7.   Plaintiffs seek damages, treble damages under RICO § 1964(c), injunctive relief including a preliminary and permanent injunction, a constructive trust, disgorgement of illicit gains, and the attorneys' fees and costs incurred in bringing this action.

8.   The Defendant scheme to defraud and their  fraud on the court that involved the most egregious litigation misconduct imaginable, that was  engineered by the Defendants described herein among other things was aimed primarily at the victim MENACHEM MENDEL SCHNEORSON including without limitation his family.

NATURE OF THE CASE

**THIS CASE, AMONG OTHER THINGS, IS ABOUT FRAUD UPON THE COURT, BY AN ATTORNEY THAT INVOLVED THE MOST EGREGIOUS LITIGATION MISCONDUCT IMAGINABLE.**

4.   As part of the scheme to defraud described herein, On June 6, 2018, Husband MENACHEM MENDEL SCHNEORSON filed his financial affidavit, that shows assets of $370,293.00 and debts of $368,580.00, for a total net worth of $1,713.00,

5.   The defendants deliberately planned and carefully executed scheme to defraud,

6.     The defendants fabricated a fraud scheme,  by blatantly adding,  three zeros to ..
       husband's total net worth, in  the  July 30, 2019. order  [the order was planned and
       prepared as proposed order by BARRY S. FRANKLIN, OLIVIA RETENAUER] See
       page 4 of 20 of Husband's financial affidavit filed 6/6/2018 attached as Exhibit A

       The July 30, 2019. ORDER which its primary purpose  among other things, was to
       calculate  Husband's total net worth,
       at page 3.  states  as follow:

                        [1]He [The Husband ] shows assets of $370,293.00
                        and debts of $368,580.00, for a total net worth of
                        $1,713,000.00

       As the old saying goes, "the numbers don't lie."

       So here as the July 30, 2019. ORDER, is subtracting  the amount  $368,580.00
       from $370,293.00  so the result you should get, **Is** . . . $1,713.00     (ONE
       THOUSAND, SEVEN HUNDRED THIRTEENTH)

       **NOT**     $1,713,000.00, (ONE  MILLION  AND  SEVEN  HUNDRED
       THIRTEENTH THOUSAND.

       So, here, we face the most  shocking and disturbing  question, how in the world
       can the, July 30, 2019. ORDER at this point after subtracting   the amount
       $368,580.00 from $370,293.00. it absurdly grows to become  $1,713,000.00,
       (ONE MILLION AND SEVEN HUNDRED THIRTEENTH THOUSAND

7.     But even more shocking and troubling is the question how on earth  would the same
       absurd, fraudulently amount of $1,713,000.00, (ONE MILLION AND SEVEN
       HUNDRED THIRTEENTH THOUSAND   continue to appear almost  in all the
       Motion, sworn statements, affidavits, petitions, in multiple courts.

8.     Equally, on 04/29/2022 Defendants  Filed a motion, the,  WIFE'S MOTION TO
       BIFURCATE (FOR ENTRY OF FINAL JUDGMENT FOR DISSOLUTION OF
       MARRIAGE) AND FOR OTHER RELIEF INCIDENT THERETO . . **. in part:**
       Pursuant to the Court's Temporary Relief Order dated **July 30, 2019** (Exhibit "A"
       hereto), the Husband became obligated to pay alimony in the nature of support in the
       amount of $3,000 ($1,000 of which was to be applied toward his arrearages and
       $2,000 for the alimony per month) along with an amount of attorney's fees and costs
       also in the nature of support in the amount of $10,000.

9.     To keep the fraud going The Defendants Willfully and maliciously continue to

       repeatedly quote the . . . net assets amount,  with the added  3 zeros that Changed

---

[1] See page 4 of 20 of Husband's financial affidavit filed 6/6/2018 attached as Exhibit A

that same amount to be read $1,713,000.00, insted $1,713.00 the difference of 3 zeros

10.  Similarly, Margalit schneorson has defrauded various authorities the IRS, Florida S. Sale Tax, creditors, contractors, various businesses out of millions of dollars.

11.  The lawyers representing Margalit schneorson knew that the lawsuit was/is a fraud it was brought by a fraudster lawyer with a history of fraudulent scams, and it was based on their repeatedly quoting the net assets amount, by adding the 3 zeros, which Changed that same amount to be read $1,713,000.00, insted $1,713.00, the difference of 3 zeros .

12.  In furtherance of the scheme to defraud alleged herein and in furtherance of their common illegal aims BARRY S. FRANKLIN, OLIVIA RETENAUER, repeatedly portrayed Mrs. schneorson as a destitute, penniless plaintiff. Even in the bankruptcy court, the enterprise of Mrs. scheneorson, barry s. franklin and associate p.a. have again falsely portrayed Mrs. schneorson as desperate, for the blatantly obvious purpose to distort the court's view from the racketeering scheme being perpetrated by the very people pretending to be offended.

## JURISDICTION AND VENUE

13.  This is an action brought pursuant to the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.   This court has supplemental jurisdiction over Plaintiffs state law claims under 28 U.S.C. 1367(a)

14.  The Defendants are subject to personal jurisdiction in this State pursuant to 18 U.S.C. § 1965(d), and are also subject to personal jurisdiction in that they either reside in this

State, engage in the transaction of business in this State and/or engaged in substantial

activities within the State and/or committed a tortious act within this State. This Court

has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 insofar as this is an action

arising under the laws of the United States.

15.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1)

        and (2) and (d) in that a substantial part of the events or omissions giving rise to the

        claims made in this action occurred in this District. In addition, pursuant to 18 U.S.C.

        § 1965(a), venue is proper in this district as one of the Defendants resides in this district,

        one of the Defendants acts as an agent for the other Defendants in this district, and all

        of the Defendants transact their affairs in this District.

### THE PARTIES

16.     Plaintiff, MENACHEM MENDEL SCHNEORSON, residing at 1553 union st Apt #2
        Brooklyn NY 11213

17.     Defendant BARRY S. FRANKLIN, having an address at   3590 Mystic Pointe Drive,
        Aventura, Florida 33180

18.     Defendant BARRY S. FRANKLIN & ASSOCIATE P.A. , upon information and belief
        is an unincorporated entity doing business in the State of Florida  with its principal
        place of business located at 3590 Mystic Pointe Drive, Aventura, Florida 33180

19.     Defendant OLIVIA RETENAUER, having an address at   3590 Mystic Pointe Drive,
        Aventura, Florida 33180

20.     Defendant FURR AND COHEN, P.A. One Boca Place, Suite 419A 2255 Glades Road
        Boca Raton, FL 33431

21.   Defendant Alan R. Crane, Esq. One Boca Place, Suite 419A 2255 Glades Road Boca
       Raton, FL 33431

22.   Defendant MARGALIT SCHNEORSON having an address at 81 kehilat warsha tel
       aviv- jaffa state of Israel 6972201 but falsely using among other addresses this address:
       1125 Ne 6st Hallandale Beach Florida 33009

23.   Defendant MICHAEL H. COHEN having an address at 1125 ne 6st Hallandale beach
       Florida 33009

24.   Defendant COHEN & SCHNEORSON INVESMENT LLC

25.   The Defendants JOHN DOE #1 through #10 are fictitious names representing persons
       of both gender, whose real names and identities are currently unknown to Plaintiff, and
       who have conducted and participated in, and conspired, confederated and agreed with
       the Defendants to conduct and participate in the affairs of the Enterprise through a
       pattern of racketeering activities in violation of 18 U.S.C. § 1962 (c) and (d), as more
       fully described below and to injure Plaintiff in his business and property by reason
       thereof. The Defendants are individuals capable of holding a legal or beneficial interest
       in property and are therefore "persons" within the meaning of 18 U.S.C. § 1961(3).

26.   Defendant XYZ Corporations #1 through # 10 are corporations, partnerships and other
       business entities or organizations whose real names and identities are currently
       unknown to Plaintiff, and who have conducted and participated in, and conspired,
       confederated and agreed with the Defendants to conduct and participate in the affairs
       of the Enterprise through a pattern of racketeering activities in violation of 18 U.S.C. §
       1962 (c) and (d), as more fully described below and to injure Plaintiff in his business

and property by reason thereof. The Defendants are entities capable of holding a legal
or beneficial interest in property and are therefore "persons" within the meaning of 18
U.S.C. § 1961(3).

**THE DEFENDANTS CONDUCTED A RICO ENTERPRISE THROUGH A PATTERN
OF RACKETEERING ACTIVITY IN FURTHERANCE OF THEIR CONSPIRACY TO
VIOLATE 18 U.S.C. § 1962(c). IN VIOLATION OF 18 U.S.C. § 1962(d)**

18.     At all relevant times, DEFENDANTS Barry S.Franklin & associate P.A, Barry s.
Franklin. Olivia Retenahuer, Margalit Schneorson and Michael H. Cohen, COHEN &
SCHNEORSON INVESMENT LLC., (collectively referred to herein as the
"Defendants" or "RICO Defendants") were associated in fact together for the common
purpose of engaging in the course of conduct described herein. Defendants formed and
conducted an association-in-fact which operated as a RICO "enterprise" (herein after
the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) & (d) and
which was engaged in, and whose activities affected interstate and foreign commerce.
The individuals and entities that associated together to form this association-in-fact
enterprise functioned as a continuing unit.

19.     At all relevant times, and from at least March of 2013 to the present time, the Defendants
were associated with the Enterprise and conducted or participated, directly or indirectly,
in the management and operation of the affairs of the Enterprise through a "pattern of
racketeering activity" within the meaning of 18. U.S.C. § 1961(5). The acts constituting
the "pattern of racketeering activity" were horizontally related to each other and were
connected in their nature and purpose to each other and to other acts of racketeering by
virtue of common participants, their relationship to the same Enterprise, a common
victim (the Plaintiff), a common method of commission, and the common purpose and
common result of defrauding and causing injury to the Plaintiff. The acts constituting

the pattern of racketeering activity were vertically related to the Enterprise. The pattern of racketeering activity engaged in and conducted by the Defendants has been continuous from at least March 2013 to date. Moreover, the pattern of racketeering activity committed by the Defendants is open-ended, in that it has no predetermined end date, and is continuous in that the scheme is and was the Defendants' regular way of operating and conducting themselves and/or their ongoing business and thus there exists the threat of continuing long-term racketeering activity.

20. Each Defendant has conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" through the commission of multiple acts of racketeering, including acts of "mail fraud" in violation of 18 U.S.C, 1341, "wire fraud" in violation of 18 U.S.C. § 1343, extortion and conspiracy to commit and attempted extortion in violation of 18 U.S.C. §1951.

21. At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18. U.S.C. § 1962(c), that is, the Defendants conspired, confederated and agreed together to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. § 1962(d).

22. Plaintiff has suffered substantial injury to his business and property by reason of, and as the result of, the Defendants' commission of the enumerated racketeering acts in furtherance of the Defendants' conspiracy to violate of 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d) and § 1964(c).

**THE DEFENDANTS' SCHEME TO DEFRAUD THE PLAINTIFF AND TO OBTAIN HIS PROPERTY THROUGH EXTORTION INCLUDING BUT NO LIMITED TO  USING FRAUDULENT CONTEMPT OF COURT PROCEEDINGS**

23.    The RICO Defendants, acting together in concert and conspiracy, have participated in a continuously running scheme, dating from at least 2013 and lasting to present time, in which, acting jointly and severally, they have, among other acts, made fraudulent property conveyances, arranged for and obtained fraudulent mortgages, committed bank fraud, insurance fraud, bankruptcy fraud, forgery and extortion in order to achieve and conceal their scheme to defraud.

24.    As part of the RICO Defendants' scheme and artifice to defraud On10/29/2021 Wife's Motion for the issuance of this WRIT OF NE EXEAT  is granted WRIT OF NE EXEAT  IN PART:  IT IS FURTHER ORDERED that the Wife's Motion for the issuance of this Writ is granted conditioned upon the Wife posting a bond with the Clerk of the Broward Court in the amount of:

**FACTS**

25.    In 2013  the defendants Margalit schneorson and Michael H. cohen began and were active in creating a partnership business of Airbnb and rental homes, with the property purportedly belonging to Michael H. Cohen.

26.    Immediately thereof Michael H. cohen move to the resident of the plaintiff at 1125 Ne 6st  Hallandale Beach florida 33009 .

27.    Immediately thereof Michael H. cohen move to the resident of the plaintiff at 1125 Ne 6st  Hallandale Beach florida 33009  with a clear  agreement that Mr. cohen will pay rent to Margalit schneorson, with delayed conditions  for his stay and living in Margalit

schneorson's property.

28.   In fact, since 2013 the partnership business paid the whole of  mortgage and the property tax and all the expenses of the Mr. cohen home.

29.   Beginning at 2015 the defendants   Margalit schneorson and Michael H. cohen registered said business as "cohen&schneorson investment LLC., and naming   as partners Margalit and Cohen.

30.   In 2015 the LLC., corporation purchased property located at 17530 NE 7 court Miami FL 33162.

31.   In 2015 the LLC corporation purchased property located at 17530 NE 7 court Miami FL 33162 and took Mortgage on subject property.

32.

33.   The LLC Corporation, ware current with the mortgage payments  until the date it was sold at March 19, 2021.

34.   On or about 5.9.2017 margalit schneorson commenced an action of divorce and child support and alimony against Menachem Mendel Schneorson.

35.   On or about 5.9.2017 margalit schneorson commenced an action of divorce and child support and alimony in her petition she stated  as followe **in pertinent part:**

("the wife previously had a successful fashion business for nine years in new York"). However,   everywhere in the case she claims that plaintiff Menachem mendel schneorson is a sole income provider

36.   In June 5 2018 margalit schneorson filed her financial affidavit in the divorce action.

      On June 5 2018 margalit schneorson filed her financial affidavit in the divorce action,
      falsely claiming that she works by Michael cohen despite the fact that she was a partner
      with Michael cohen as owners of the Cohen&Schneorson investment LLC.

37.   Additionally, in the same financial affidavit in section 3 at paragraph A on the question
      of business interest she left it empty showing that she doesn't have any interest of any
      business which she falsely claims that she is a coordinator worker by Michael cohen
      despite the fact that she was equal owner with him in the Cohen&Schneorson
      investment LLC.

38.   On 7/10/2019 the wife filed an ex parte motion, seeking to order the husband to pay
      $300.000 in 5 days, for her part of the marital asset that was purportedly sold by the
      husband, in that motion She misrepresent to the court in her affidavit, likewise her
      partner Michael cohen misrepresent The Ground for such relife, to the court, stating
      that menachem schneorson admitted in his deposition that the certain property
      belong to him even though not under his name or Margalit name.

39.   To make the fraud work the wife's affidavit in paragraph 4-5 identifies the property.
      as certain new York property without giving any address. however, she added as an
      exhibit, the letter from her lawyer, said letter speaks only about . . 719 Eastern
      parkway.

40.   However, further in paragraph 7 she twisted the story stating that she recently
      learned that the certain new York property that was sold is located . . . at 1257
      ocean parkway.

41.     Consequently, .on 7/19/2019 Based on the wife's affidavit and her partner Michael
        cohen affidavit, which was deliberately planned and carefully executed, the court
        made an order to freeze money of the third party of said sell. the wife  and her partner
        Michael cohen made that fraudulent  affidavit  to get the fraudulent  order to freeze
        the money.

42.     On 7/19/2019 the court granted the ex parte motion base on the fraudulent  affidavits.

43.     On 7/26/2019 the husband responded  to the order stating that he has no investment or
        connection to that property.

44.     On10/29/2021 Wife's Motion for the issuance of this WRIT OF NE EXEAT  is
        granted WRIT OF NE EXEAT  **IN PART:**  IT IS FURTHER ORDERED that the
        Wife's Motion for the issuance of this Writ is granted conditioned upon the Wife
        posting a bond with the Clerk of the Broward Court in the amount of:

45.     In furtherance of Defendants, unethical and immoral conduct, including without
        limitation their continuing  fraud on the court that involved the most egregious
        litigation misconduct imaginable  On March 18, 2022   Defendant FURR and
        Defendant COHEN, P.A. Alan R. Crane, Esq., Submitted a motion to with its 8
        Exhibit UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF
        NEW YORK said motion is primarily  based on defendants fabricated a fraud
        scheme, by blatantly adding, three  zeros  to husband's total net worth $1,713.00  and
        change it by  adding, three  zeros to become $1,713,000.00..

46.     Said motion with its 8 Exhibit is attached hereto as Exhibit B and incorporated herein
        by reference.

47. Similarly, on 04/29/2022 Defendants  Filed a motion the,  WIFE'S MOTION TO BIFURCATE (FOR ENTRY OF FINAL JUDGMENT FOR DISSOLUTION OF MARRIAGE) AND FOR OTHER RELIEF INCIDENT THERETO . . . **. in part:** Pursuant to the Court's Temporary Relief Order dated **July 30, 2019** (Exhibit "A" hereto), the Husband became obligated to pay alimony in the nature of support in the amount of $3,000 ($1,000 of which was to be applied toward his arrearages and $2,000 for the alimony per month) along with an amount of attorney's fees and costs also in the nature of support in the amount of $10,000.

48. At all relevant times, and from at least middle of  2013 to the present time, the Defendants were associated with the Enterprise and conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" within the meaning of 18. U.S.C. § 1961(5). The acts constituting the "pattern of racketeering activity" were horizontally related to each other and were connected in their nature and purpose to each other and to other acts of racketeering by virtue of common participants, their relationship to the same Enterprise, a common victim (the Plaintiff), a common method of commission, and the common purpose and common result of defrauding and causing injury to the Plaintiff and his family, the acts constituting the pattern of racketeering activity were vertically related to the Enterprise. The pattern of racketeering activity engaged in and conducted by the Defendants has been continuous from at least on middle of 2013. to date.

49. Moreover, the pattern of racketeering activity committed by the Defendants is open-ended, in that it has no predetermined end date, and is continuous in that the scheme is and was the Defendants' regular way of operating and conducting themselves and/or

their ongoing business and thus there exists the threat of continuing long-term racketeering activity.

50. Each Defendant has conducted or participated, directly or indirectly, in the management and operation of the affairs of the Enterprise through a "pattern of racketeering activity" through the commission of multiple acts of racketeering, including acts of "mail fraud" in violation of 18 U.S.C, 1341, "wire fraud" in violation of 18 U.S.C. § 1343, extortion and conspiracy to commit and attempted extortion in violation of 18 U.S.C. §1951.

51. At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18. U.S.C. § 1962(c), that is, the Defendants conspired, confederated, and agreed together to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. § 1962(d).

52. Plaintiff has suffered substantial injury to his business and property by reason of, and as the result of, the Defendants' commission of the enumerated racketeering acts in furtherance of the Defendants' conspiracy to violate of 18 U.S.C. § 1962(c), all in violation of 18 U.S.C. § 1962(d) and § 1964(c).

## AS AND FOR  FIRST CAUSE OF ACTIO
( AGAINST ALL DEFENDANTS )
### FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)

51. Plaintiff repeats, realleges, and incorporates herein by reference the preceding paragraphs as if set forth fully herein.

52. Defendants (collectively, "RICO Defendants") violated RICO and Plaintiff was injured as a result.

53.     Each RICO Defendant is a "person" capable of holding legal or beneficial interest in
        property within the meaning of 18 U.S.C. § 1961(3).

54.     Each RICO Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior
        paragraphs, and as further described below.

55.     The Enterprise. RICO Defendants form an association-in-fact for the common and
        continuing purpose described herein and constitute an enterprise within the meaning
        of 18 U.S.C. § 1961(4), and engaged in the conduct of their affairs through a
        continuing pattern of racketeering activity. There may also be other members of the
        enterprise who are unknown at this time.

56.     Pattern of Racketeering Activity. RICO Defendants, each of whom are persons
        associated with, or employed by, the enterprise, did knowingly, willfully and
        unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise
        through a pattern of racketeering activity within the meaning of 18 U.S.C. §§
        1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by RICO
        Defendants' regular and repeated use of the facilities and services of the enterprise.
        RICO Defendants had the specific intent to engage in the substantive RICO violations
        alleged herein.

57.     Predicate Act: Use of Mails and Wires to Defraud Plaintiff in Violation of 18 U.S.C.
        §§ 1341 and 1343. RICO Defendants committed acts in violation of 18 U.S.C. §§
        1341 and 1343 in that they devised or intended to devise a scheme to defraud Plaintiff
        and other parties or to obtain money from Plaintiff by means of false or fraudulent
        pretenses, representations or promises. For the purpose of executing their scheme or
        artifice, RICO Defendants caused delivery of various documents and things by the

U.S. mails or by private or commercial interstate earners or received such therefrom. RICO Defendants also transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals. The acts of RICO Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance RICO Defendants' scheme. RICO Defendants carried out their scheme in different states and could not have done so unless they used the U.S. mails or private or commercial interstate carriers

58.  or interstate wires. In furtherance of their scheme alleged herein, RICO Defendants communicated among themselves in furtherance of the scheme to defraud Plaintiff and others. Plaintiff is informed and believes that these communications were typically transmitted by wire (i.e., electronically) and/or through the United States mails or private or commercial earners.

59.  More specifically, RICO Defendants used wire and/or U.S. mail or private or commercial carriers to transmit payments, correspondence, and purported litigation documents for the purpose of continuing their fraudulent scheme.

60.  RICO Defendants' shared objective was and is to divert funds to their own benefit and to facilitate the payment of illegitimate litigation.

61.  As a direct and proximate result of RICO Defendants' false representations, false pretenses and deceptive communications and RICO Defendants' participation in such enterprise, Plaintiff has been damaged in being required to defend against the

confirmation of numerous illegitimate litigation nationwide.

62.   <u>Continuity of Conduct</u>. RICO Defendants' violations of law as set forth herein, each

of which directly and proximately injured Plaintiff, constituted a continuous course of

conduct spanning a period from approximately early 2013 to present, which was

intended to obtain money through false representations, fraud, deceit, and other

improper means. Therefore, said violations were a part of a pattern of racketeering

activity under 18 U.S.C. §§ 1961(1) and (5).

63.   Upon information and belief, RICO Defendants have conducted and/or participated,

directly and/or indirectly, in the conduct of the affairs of the alleged enterprise

through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. §

1962(c). The unlawful actions of RICO Defendants, and each of them, have directly,

illegally, and proximately caused and continue to cause injuries to Plaintiff in its

business in that Plaintiff has been compelled to expend resources and has suffered

damage to its business interests and reputation as a result of such racketeering

activity. Plaintiff seeks an award of damages in compensation for the injury. Plaintiff

accordingly seeks an award of three times the damages it sustained, and the recovery

of reasonable attorneys' fees and costs of investigation and litigation, as well as any

other relief as authorized by statute

64.   **AS AND FOR SECOND CAUSE OF ACTION**

65.   ( AGAINST ALL DEFENDANTS )

66.   **FEDERAL CIVIL RICO, 18 U.S.C. § 1962(D)**

67.   Plaintiff repeats, realleges, and incorporates herein by reference the preceding

paragraphs as if set forth fully herein.

68.   In violation of 18 U.S.C. § 1962(d), RICO Defendants, and each of them, knowingly,

willfully, and unlawfully conspired to facilitate a scheme which included the

operation or management of a RICO enterprise through a pattern of racketeering

activity

69.    as alleged above. The conspiracy commenced at least as early as early 2013 and is

ongoing. The conspiracy's purpose was to divert money from Plaintiff and third

parties to their own benefit via fraudulent litigation awards. Each of the RICO

Defendants committed at least one overt act in furtherance of such conspiracy.

70.    These acts in furtherance of the conspiracy include creating and transmitting false

litigation documents, participating in illegitimate litigation , and facilitating the

payment of monies to Sitcomm and the "arbitrators" via wire transfer.

71.    Even if any of the RICO Defendants did not agree to harm Plaintiff specifically, the

purpose of the acts they engaged in was to advance the overall object of the

conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of

RICO Defendants' actions.

72.    Plaintiff has been injured and continues to be injured in its business and property by

RICO Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful

actions of RICO Defendants, and each of them, have directly, illegally, and

proximately caused and continue to cause injuries to Plaintiff in its business or

property in that Plaintiff has been compelled to expend resources and has suffered

damage to its business interests and reputation as a result of such racketeering

activity.

72.    Plaintiff seeks an award of damages in compensation for the injury suffered. Plaintiff
further seeks an award of three times the damages it sustained, and the recovery of
reasonable attorneys' fees and costs of investigation and litigation, as well as any

other relief as authorized.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, as

follows:

(i) On the First Cause of Action, pursuant to 18 U.S.C. § 1962(d) and § 1964(c),

awarding Plaintiff threefold his damages sustained in a sum to be determined at trial,

but believed to be not less than five million dollars ($15,000,000) and reasonable

attorneys' fees, costs and prejudgment interest; and

(ii) Awarding such other and further relief as this Court deems just and proper.

New York,

*M. S*

Dated Brooklyn New York
       June 6, 2022

# Exhibit

## "A"

Filing # 73200483 E-Filed 06/06/2018 06:19:29 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

IN RE: The Marriage of:                    FAMILY DIVISION

MARGALIT SCHNEORSON,                        CASE NO.: FMCE 17-011569

        Petitioner/Wife,                DIVISION 36

and

MENACHEM SCHNEORSON,

        Respondent/Husband.
_____/

### HUSBAND'S NOTICE OF FILING PRELIMINARY FINANCIAL AFFIDAVIT

    The Respondent/Husband, MENACHEM SCHNEORSON, by and through his undersigned counsel, files this, his Preliminary Financial Affidavit.

    I HEREBY CERTIFY that on this 6th day of June, 2018, a true and correct copy of the above and foregoing was electronically served in compliance with Rule 2.516(a) and Administrative Order 13-49 through Florida Courts E-filing Portal to Email bfranklin@barrysfranklin.com upon Barry S. Franklin, Esq., BARRY S. FRANKLIN & ASSOCIATES, P.A., Attorneys for Wife, 3590 Mystic Pointe Drive, Aventura, Florida 33180.

                    KLUGER, KAPLAN, SILVERMAN,
                    KATZEN & LEVINE, P.L.
                    Attorneys for Husband
                    201 S. Biscayne Boulevard
                    Twenty Seventh Floor
                    Miami, FL 33131
                    Telephone:   (305) 379-9000
                    Facsimile:   (305) 379-3428

By:             _____/S/_____
                    DEBORAH S. CHAMES, ESQUIRE
                    Florida Bar No.: 311448
                    MELISSA S. CHAMES, ESQUIRE
                    Florida Bar No.: 074335
                    Primary:     Service@klugerkaplan.com
                    Secondary 1:  DChames@KlugerKaplan.com
                    Secondary 2:  MChames@KlugerKaplan.com

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.
THE CITIGROUP CENTER " 201 SOUTH BISCAYNE BOULEVARD, 27TH FLOOR, MIAMI, FLORIDA 33131 " T. 305-379-9000 " F. 305-379-3428
2000 GLADES ROAD, SUITE 300, BOCA RATON, FLORIDA 33431 " T. 561-962-3135 " F. 561-613-4100
www.klugerkaplan.com

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

IN RE: THE MARRIAGE OF:
MENACHEM SCHNEORSON,
Husband,
and
MARGALIT SCHNEORSON,
Wife.

Case Number: FMCE 2017-011569
Division: FAMILY

**HUSBAND'S PRELIMINARY FINANCIAL AFFIDAVIT (LONG FORM)**

($ 50,000 or more Individual Gross Annual Income)

I, MENACHEM SCHNEORSON, being sworn, certify that the following information is true.

## SECTION I. INCOME

1. My age is: 52
2. My Occupation is: Supervisor for Kosher
3. I am currently [ X all that apply]
   ___ a. Unemployed

Describe your efforts to find employment, how soon you expect to be employed, and the pay you expect to receive.

_____
_____
_____
_____

   x___ b: Employed by: SHAIKE'S CATERING          Telephone :

Address: 4238 Hollywood Boulevard, Hollywood, FL

Pay rate: $                                        Pay Period : Monthly

If you are expecting to become unemployed or change jobs soon, describe the change you expect and why and how it will affect your income:

_____
_____
_____
_____

   _____ Check here if you currently have more than one job. List the information above for the second job(s) on a separate sheet and attach it to this affidavit.

Page 1

_____ c. Retired.

| | |
|---|---|
| Date of Retirement : | _____ |
| Employer from whom retired : | _____ |
| Address : | _____ |
| City, State and Zipcode : | _____ |
| Telephone Number : | _____ |

**LAST YEAR'S GROSS INCOME:**   Your Income        Other Party's *(If Known)*

$ 14,209.00                    $ UNKNOWN

Year Income was generated :        2017                      2017

**SECTION    I.  PRESENT MONTHLY GROSS INCOME:**

All amounts must be **MONTHLY:**                                                      Footnote No.

| | | | |
|---|---|---|---|
| 1. $ | 1,184.08 | Monthly gross salary or wages | 1 |
| 2. | 0.00 | Monthly bonuses, commissions, allowances, overtime, tips, and similar payments | |
| 3. | 622.50 | Monthly business income from sources such as self-employment, partnerships, close corporations, and/or independent contracts (Gross receipts minus ordinary and necessary expenses required to produce income. )  ( Attach sheet itemizing such income and expenses.) | 2 |
| 4. | 500.00 | Monthly disability benefits/SSI | 3 |
| 5. | 0.00 | Monthly Workers' Compensation | |
| 6. | 0.00 | Monthly Unemployment Compensation | |
| 7. | 0.00 | Monthly pension, retirement, or annuity payments | |
| 8. | 0.00 | Monthly Social Security benefits | |
| 9. | 0.00 | Monthly alimony actually received<br>9a.  From this Case:        $        0.00<br>9b.  From other case(s):          0.00   Add 9a and 9b | |
| 10. | 0.00 | Monthly interest and dividends | |
| 11. | 0.00 | Monthly rental income (gross receipts minus ordinary and necessary expenses required to produce income) (☐ Attach sheet itemizing such income and expense items) | |
| 12. | 0.00 | Monthly income from royalties, trusts, or estates | |
| 13. | 0.00 | Monthly reimbursed expenses and in-kind payments to the extent that they reduce personal living expenses | |
| 14. | 0.00 | Monthly gains derived from dealing in property (not including nonrecurring gains) | |
| 15. | 1,000.00 | Any other income of a recurring nature (source)  Detail Listing is on Line 16 | 13 |
| 16. | | Mr. Kaye loans the Husband $1,000.00 monthly for his living expenses. | |
| 17. $ | 3,306.58 | **TOTAL PRESENT MONTHLY GROSS INCOME** (Add lines 1 - 16) | |

17. $ __3,306.58__   **PRESENT MONTHLY GROSS INCOME**   (From prior Page)

**PRESENT MONTHLY DEDUCTIONS:**

**All amounts must be MONTHLY.**

Monthly federal, state and local income tax (corrected for filing status and
allowable dependents and income tax liabilities)

      a. Filing Status ____SGL____                                         Footnote No. ____

18. ____76.26____     b. Number of dependents claimed ____0____

19. ____161.37____ Monthly FICA or self-employment taxes

20. ____17.17____ Monthly Medicare payments

21. ____0.00____ Monthly mandatory union dues

22. ____0.00____ Monthly mandatory retirement payments

Monthly health insurance payments (including dental insurance), excluding
23. ____0.00____ portion paid for any minor children of this relationship

Monthly court-ordered child support actually paid for children from another
24. ____0.00____ relationship

Monthly court-ordered alimony actually paid

               25a. from this case:   $    0.00

25. ____0.00____ Add 25a and 25b 25b  from other case(s):     0.00

**TOTAL DEDUCTIONS ALLOWABLE UNDER SECTION 61.30,**

26. $ ____254.80____    **FLORIDA STATUTES**   (Add lines 18 through 25)

27. $ ____3,051.78____ **PRESENT NET MONTHLY INCOME**   (Subtract line 26 from line 17)

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

## SECTION II.   AVERAGE MONTHLY EXPENSES

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

**HOUSEHOLD**

| | | | | |
|---|---|---|---|---|
| 1. | 790.32 | Mortgage or Rent Payments | 6 | Payment is made to Wells Fargo for the first mortgage on the property located 1125 N.W. 6th Street, Hallandale, FL 33009 |
| 2. | 300.00 | Property Taxes ( Not in Payment) | 7 | $3,600.00 annually. |
| 3. | 333.33 | Insurance on Residence (Not in Pmt.) | 8 | $4,000.00 annually. |
| 4. | 0.00 | Condo/Homeowner's Maint/Assoc  Fees | | |
| 5. | 200.00 | Electricity | | |
| 6. | 140.00 | Water, Garbage and Sewer | | |
| 7. | 0.00 | Telephone | | |
| 8. | 40.00 | Fuel Oil or Natural Gas | | |
| 9. | 75.00 | Repairs and Maintenance | | |
| 10. | 50.00 | Lawn Care | | |
| 11. | 125.00 | Pool Maintenance | | |
| 12. | 0.00 | Pest Control | | |
| 13. | 0.00 | Misc. Household | | |
| 14. | 70.00 | Cable TV | 9 | This expense includes internet. |
| 15. | 300.00 | Food and Home Supplies | 10 | This expense is for the Husband only. |
| 16. | 120.00 | Meals Outside Home | | |
| 17. | 36.00 | Alarm Service Contract | | |
| 18. | 30.00 | Service Contracts on Appliances | | |
| 19. | 0.00 | Maid Service | | |
| 20. | 0.00 | Internet Services | | |
| **21.** | **2,609.65** | **SUBTOTAL**   (add lines 1 through 20) | | |

**AUTOMOBILE**

| | | | | |
|---|---|---|---|---|
| 22. | 150.00 | Gasoline and Oil | 4 | The Husand currently drives a leased 2018 Hyundai Sonata. |
| 23. | 0.00 | Repairs | | |

Page 4

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

| SECTION II. | AVERAGE MONTHLY EXPENSES |
|---|---|

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

**AUTOMOBILE**

| | | |
|---|---|---|
| 24. | 20.00 | Auto Tags and Emission Testing |
| 25. | 140.00 | Auto Insurance |
| 26. | 220.00 | Car Payments (Lease or Financing) |
| 27. | 0.00 | Auto Rental/Replacement Cost |
| 28. | 0.00 | Alternative Transportation |
| 29. | 20.00 | Tolls and Parking |
| 30. | 550.00 | **SUBTOTAL**   (add lines 22 through 29) |

**CHILDREN'S EXPENSE FOR CHILDREN COMMON TO BOTH PARTIES[1]**

| | | |
|---|---|---|
| 31. | 0.00 | Nursery, Babysitting or Daycare |
| 32. | 0.00 | School Tuition |
| 33. | 0.00 | School Supplies and Books, Fees |
| 34. | 0.00 | After School Activities |
| 35. | 0.00 | Lunch Money |
| 36. | 0.00 | Private Lessons / Tutoring |
| 37. | Estimate 100.00 | Allowance |
| 38. | 0.00 | Clothing / Uniforms |
| 39. | 0.00 | Entertainment-Movies, Parties, Etc. |
| 40. | 0.00 | Health Insurance |
| 41. | 0.00 | Medical, Dental, Prescriptions (NR) |
| 42. | 0.00 | Psychiatric/Psychological/Counselor |
| 43. | 0.00 | Vitamins |
| 44. | 0.00 | Beauty Parlor/Barbershop |
| 45. | 0.00 | Non-Prescription Medication |
| 46. | 0.00 | Cosmetics/Toiletries and Sundries |
| 47. | 0.00 | Gifts From Children to Others |
| 48. | 0.00 | Vacation |
| 49. | 0.00 | Camp or/and Other Summer Activities |
| 50. | 0.00 | Clubs ( Boy/Girl Scouts, Etc) |
| 51. | 0.00 | Time-Sharing Expense Non-Res Parent |
| 52. | 0.00 | Orthodontic |

5 Currently under Florida Medicaid.

---

[1] Parties' daughter is over 18 years old and lives with family in New York during the school year.  They provide her with food and housing.  The Husband provides her with food and housing when she visits him in Miami. Her health insurance is covered through Healthy Kids.

| SECTION II.   AVERAGE MONTHLY EXPENSES |
|---|

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

**CHILDREN'S EXPENSE FOR CHILDREN COMMON TO BOTH PARTIES**

| 53. | 0.00 | Miscellaneous |
|---|---|---|
| **54.** | 100.00 | **SUBTOTAL**   (add lines 31 through 53) |

**CHILD(REN) ANOTHER RELATIONSHIP (OTHER THAN COURT-ORDERED CHILD...**

| 55. | 0.00 | There are none |
|---|---|---|
| **56.** | 0.00 | **SUBTOTAL**   (add lines 55 through 55) |

**INSURANCE**

| 57. | 0.00 | Health Insurance-Excluding Children |
|---|---|---|
| 58. | 50.00 | Life Insurance |
| 59. | 0.00 | Dental Insurance |
| **60.** | 50.00 | **SUBTOTAL**   (add lines 57 through 59) |

**OTHER MONTHLY EXPENSES NOT LISTED ABOVE**

| 61. | 25.00 | Dry Cleaning & Laundry | |
|---|---|---|---|
| 62. | 25.00 | Clothing | 11  Husband buys his clothes at Goodwill. |
| 63. | 15.00 | Medical/Dental/Prescriptions (NR) | |
| 64. | 0.00 | Psychiatric/Psychological/Counselor | |
| 65. | 0.00 | Non-Prescription Medications | |
| 66. | 10.00 | Cosmetics, Toiletries, Sundries | |
| 67. | 4.00 | Grooming | |
| 68. | 42.00 | Gifts | |
| 69. | 0.00 | Pet Expenses | |
| 70. | 5.00 | Club Dues and Memberships | 12  LA Fitness. |
| 71. | 0.00 | Sports and Hobbies | |
| 72. | 60.00 | Entertainment | |
| 73. | 0.00 | Periodicals/Books/Tapes/CD's | |
| 74. | 0.00 | Vacations | |
| 75. | 50.00 | Religious Organizations | |
| 76. | 0.00 | Bank Charges/ Credit Card Fees | |
| 77. | 0.00 | Education Expenses | |

Page 6

## SECTION II.   AVERAGE MONTHLY EXPENSES

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

**OTHER MONTHLY EXPENSES NOT LISTED ABOVE**

78. _____ 0.00 Professional Expenses
79. _____ 236.00 **SUBTOTAL**   (add lines 61 through 78)

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

| SECTION II.   AVERAGE MONTHLY EXPENSES |
|---|

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

## PAYMENTS TO CREDITORS

| | | | | |
|---|---|---|---|---|
| 80. | 0.00 | Wells Fargo (2683) | 7 | First Mortgage on the marital residence. As of 04/16/18. |
| 81. | 0.00 | Barry Kaye | 8 | Second Mortgage on the marital residence. Recorded 07/06/17, Instrument No.: 114484686. |
| 82. | 0.00 | Wells Fargo (VISA) (1231) | 9 | As of 04/26/18. |
| 83. | 0.00 | Discover (███) | 10 | As of 04/05/18. |
| 84. | 0.00 | Alaska Visa Signature (███) | 11 | As of 04/24/18. |
| 85. | 0.00 | Barclaycard (███) | 12 | As of 04/19/18. |
| 86. | 0.00 | Wells Fargo (0621) | 13 | Line of Credit.  As of 04/09/18. |
| 87. | 0.00 | Capital One (███) | 14 | As of 04/05/18. |
| 88. | 0.00 | Chase (███) | 15 | As of 04/20/18. |
| 89. | 0.00 | Barry Kaye | 16 | Living expenses.  This debt increases every month.  $1,000.00 monthly deposited into the Husband's pay pal account. |
| 90. | 0.00 | Yaakov Flint | | |
| 91. | 0.00 | Kluger Kaplan | 17 | As of 05/15/18. This amount includes work-in -progress. |
| 92. | 0.00 | Markaz Banot 770 | 18 | Daughter's school. |
| 93. | 0.00 | New York Life (Loan against insurance) | | |
| 94. | 0.00 | Citi (███) | 19 | As of 04/19/18 |
| 95. | 0.00 | Chabbad of South Florida | 20 | Promissory Note as of 11/10/17 to pay legal fees. |
| 96. | 0.00 | Barry Kaye | 21 | Property in New York. Amount undetermined at this time. |

Page 8

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

## SECTION II.    AVERAGE MONTHLY EXPENSES

Proposed/Estimated Expenses. If this is a dissolution of marriage case and your expenses as listed below do not reflect what you actually pay currently, you should write "estimate" next to each amount that is estimated.

### PAYMENTS TO CREDITORS

| | | |
|---|---|---|
| 97. | 0.00 | Lubavitch |
| 98. | 0.00 | Nissan Return on Lease |
| 99. | 0.00 | Past due taxes on marital residence |
| 100. | 0.00 | **SUBTOTAL** (add lines 80 through 99) |

22 Past due taxes on marital residence for 2017.

| | | |
|---|---|---|
| 101. | 3,545.65 | **TOTAL MONTHLY EXPENSES:** |

### SUMMARY

| | | |
|---|---|---|
| 102. | 3,051.78 | **PRESENT MONTHLY NET INCOME** (from line 27 of SECTION I. INCOME) |
| 103. | 3,545.65 | **TOTAL MONTHLY EXPENSES** (from line 101. above) |
| 104. | | **SURPLUS** (if line 102 is greater than line 103) (Subtract line 103 from line 102) |
| 105. | -493.87 | **(DEFICIT)** (if line 103 is greater than line 102) (Subtract line 102 from line 103)[2] |

---

[2] Deficit is funded by credit cards and personal loans.

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

## SECTION III.   ASSETS AND LIABILITIES

**A. ASSETS: (This is where you list what you OWN.)**
**INSTRUCTIONS:**

STEP 1: In column A, list a description of each separate item owned by you (and/or your spouse, if this is a petition for dissolution of marriage).

STEP 2:  If this is a petion for dissolution of marriage, check the box, in Column A next to any item that you are requesting the judge award you.

STEP 3: In column B, write what you believe to be the current fair market value of all items listed.

STEP 4: Use column C only if this is a petition for dissolution of marriage and you believe an item is "nonmarital," meaning it belongs to only one of you and should not be divided.  You should indicate to whom you believe the item belongs.  (Typically, you will only use Column C if property was owned by one spouse before the marriage.  See the "General Information for Self-Represented Litigants? found at the beginning of these forms and section 61.075(1), Florida Statutes, for definitions of "marital" and "nonmarital" assets and liablities.)

| A<br>ASSETS: DESCRIPTION OF ITEM(S)<br>LIST ONLY LAST FOUR DIGITS OF ACCOUNT NUMBERS.<br>Check the line next to any asset(s) which you are requesting<br>the judge award to you. | | B<br>Current<br>Fair<br>Market<br>Value | C<br>Nonmarital<br><br>(☒Correct Column) | |
|---|---|---|---|---|
| | FNN | | HUSBAND | WIFE |
| Cash On Hand and In Banks | | | | |
| ☒ Wells Fargo (5196) | 3 | 3,488 | ☐ | ☐ |
|    FN#  3 As of  04/10/18. | | | | |
| ☒ Wells Fargo (3353) | 4 | 82 | ☐ | ☐ |
|    FN#  4 This is jointly held with parties' daughter.   Balance as of  04/11/18. | | | | |
| ☒ Wells Fargo (1576) | 5 | 21 | ☐ | ☐ |
|    FN#  5 As of 03/31/18. | | | | |
| Totals | | 3,591 | | |
|   Stocks and Bonds | | | | |
| ☐ Stock | | 0 | ☐ | ☐ |
| Totals | | 0 | | |

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

| A<br>ASSETS: DESCRIPTION OF ITEM(S)<br>LIST ONLY LAST FOUR DIGITS OF ACCOUNT NUMBERS.<br>Check the line next to any asset(s) which you are requesting<br>the judge award to you. | FNN | B<br>Current<br>Fair<br>Market<br>Value | C<br>Nonmarital<br>([x]Correct Column) | |
|---|---|---|---|---|
| | | | HUSBAND | WIFE |
| **Real Estate Assets** | | | | |
| [X] 1125 N.E. 6th Street | 23 | 353,202 | ☐ | ☐ |
| FN# 23 Per <zillow.com> as of 01/29/18. Titled in the Husband's name. | | | | |
| Totals | | 353,202 | | |
| **Business Interests** | | | | |
| ☐ Cohen & Schneorson Investments, LLC | UNK 1 | 0 | ☐ | ☐ |
| FN# 1 Business formed by Wife during the marriage. | | | | |
| ☐ ABALOVE, LLC | UNK 2 | 0 | ☐ | ☐ |
| FN# 2 Company may not be operative. | | | | |
| Totals | | 0 | | |
| **Transportation Assets** | | | | |
| ☐ 2015 Nissan Ultima (Lease) | | 0 | ☐ | ☐ |
| Totals | | 0 | | |
| **Retirement Assets** | | | | |
| ☐ Retirement Plan | | 0 | ☐ | ☐ |
| Totals | | 0 | | |
| **Insurance Assets** | | | | |
| [X] Life Insurance | 6 | 9,000 | ☐ | ☐ |
| FN# 6 Cash surrender value. | | | | |
| Totals | | 9,000 | | |
| **Furniture and Fixtures Assets** | | | | |
| [X] Furniture | | 4,000 | ☐ | ☐ |
| [X] Electronics | | 500 | ☐ | ☐ |
| Totals | | 4,500 | | |
| **Tangible Other Assets** | | | | |
| ☐ Wife's Jewelry | UNK | 0 | ☐ | ☐ |
| ☐ Husband's Jewelry | UNK | 0 | ☐ | ☐ |
| Totals | | 0 | | |

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

| A<br>ASSETS: DESCRIPTION OF ITEM(S)<br>LIST ONLY LAST FOUR DIGITS OF ACCOUNT NUMBERS.<br>Check the line next to any asset(s) which you are requesting<br>the judge award to you. | FNN | B<br>Current<br>Fair<br>Market<br>Value | C<br>Nonmarital<br><br>(☒Correct Column)<br>HUSBAND | WIFE |
|---|---|---|---|---|
| Miscellaneous Assets | | | | |
| ☐ Miscellaneous | | 0 | ☐ | ☐ |
| Totals | | 0 | | |
| Total Assets | | 370,293 | | |

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

**B. LIABILITIES/DEBTS: (This is where you list what you OWE.)**

**INSTRUCTIONS:**

STEP 1: In column A, list a description of each separate debt owed by you (and/or your spouse, if this is a petition for dissolution of marriage).

STEP 2: If this is a petiion for dissolution of marriage, check the box, in Column A next to any debt(s) for which you believe you should be responsible.

STEP 3: In column B, write what you believe to be the current amount owed for all items listed.

STEP 4: Use column C only if this is a petition for dissolution of marriage and you believe an item is "nonmarital," meaning it belongs to only one of you and should not be divided.  You should indicate to whom you believe the item belongs.  (Typically, you will only use Column C if property was owned by one spouse before the marriage.  See the "General Information for Self-Represented Litigants? found at the beginning of these forms and section 61.075(1), Florida Statutes, for definitions of "marital" and "nonmarital" assets and liablities.)

| A<br>LIABILITIES: DESCRIPTION OF ITEM(S)<br>LIST ONLY LAST FOUR DIGITS OF ACCOUNT NUMBERS.<br>Check the line next to any debt(s) for which you believe you should be responsible. | FNN | B<br>Current Amount Owed | C<br>Nonmarital<br>(☒Correct Column) | |
|---|---|---|---|---|
| | | | HUSBAND | WIFE |
| [X] Wells Fargo (2683) | 7 | 158,850 | ☐ | ☐ |
| FN#  7 First Mortgage on the marital residence.  As of 04/16/18. | | | | |
| [X] Barry Kaye | 8 | 50,000 | ☐ | ☐ |
| FN#  8 Second Mortgage on the marital residence.  Recorded 07/06/17, Instrument No.: 114484686. | | | | |
| [X] Wells Fargo (VISA) (1231) | 9 | 10,590 | ☐ | ☐ |
| FN#  9 As of 04/26/18. | | | | |
| [X] Discover (███) | 10 | 6,296 | ☐ | ☐ |
| FN#  10 As of 04/05/18. | | | | |
| [X] Alaska Visa Signature (███) | 11 | 15,803 | ☐ | ☐ |
| FN#  11 As of 04/24/18. | | | | |
| [X] Barclaycard (0049) | 12 | 7,961 | ☐ | ☐ |
| FN#  12 As of 04/19/18. | | | | |
| [X] Wells Fargo (0621) | 13 | 6,461 | ☐ | ☐ |
| FN#  13 Line of Credit.  As of 04/09/18. | | | | |

Page 13

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

| A | | B | C | |
|---|---|---|---|---|
| **LIABILITIES: DESCRIPTION OF ITEM(S)** | | | | |
| LIST ONLY LAST FOUR DIGITS OF ACCOUNT NUMBERS.<br>Check the line next to any debt(s) for which you believe you should be responsible. | FNN | Current<br>Amount<br>Owed | Nonmarital<br>([X]Correct Column) | |
| | | | HUSBAND | WIFE |
| [X] Capital One (███) | 14 | 9,591 | ☐ | ☐ |
| FN# 14 As of 04/05/18. | | | | |
| [X] Chase (2980) | 15 | 5,739 | ☐ | ☐ |
| FN# 15 As of 04/20/18. | | | | |
| [X] Barry Kaye | 16 | 50,000 | ☐ | ☐ |
| FN# 16 Living expenses. This debt increases every month.  $1,000.00 monthly deposited into the Husband's pay pal account. | | | | |
| [X] Yaakov Flint | | 18,000 | ☐ | ☐ |
| [X] Kluger Kaplan | 17 | 1,592 | ☐ | ☐ |
| FN# 17 As of 05/15/18. This amount includes work-in-progress. | | | | |
| [X] Markaz Banot 770 | 18 | 3,000 | ☐ | ☐ |
| FN# 18 Daughter's school. | | | | |
| [X] New York Life (Loan against insurance) | | 7,500 | ☐ | ☐ |
| [X] Citi (███) | 19 | 4,763 | ☐ | ☐ |
| FN# 19 As of 04/19/18 | | | | |
| [X] Chabbad of South Florida | 20 | 7,500 | ☐ | ☐ |
| FN# 20 Promissory Note as of 11/10/17 to pay legal fees. | | | | |
| [X] Barry Kaye | 21 | 1 | ☐ | ☐ |
| FN# 21 Property in New York.  Amount undetermined at this time. | | | | |
| [X] Lubavitch | | 1 | ☐ | ☐ |
| [X] Nissan Return on Lease | | 1,232 | ☐ | ☐ |
| [X] Past due taxes on marital residence | 22 | 3,700 | ☐ | ☐ |
| FN# 22 Past due taxes on marital residence for 2017. | | | | |
| Totals For Unsecured Liabilities | | 368,580 | | |

Florida Family Law Rules of Procedure Form 12.902(c), Family Law Financial Affidavit (01/15)

|  |  |  |
|---|---|---|
| Total Liabilities |  | 368,580 |

**C:  NET WORTH ( excluding contingent assets and liabilities)**

|  |  |  |
|---|---|---|
| Total Assets | $ | 370,293 |
| Total Liabilities |  | 368,580 |
| Total Net Worth (Assets minus Liabilities) | $ | 1,713 |

**D. CONTINGENT ASSETS AND LIABILITIES:**

**INSTRUCTIONS:**

If you have any POSSIBLE ASSETS (income potential, accrued vacation or sick leave, bonus, inheritance, etc.)
or POSSIBILE LIABILITIES (possible lawsuits, future unpaid taxes, debts assumed by another), you must list them here.

| A<br>Contingent Assets<br>Check the line next to any contingent assets(s) which you are requesting the judge award to you. | FNN | B<br>Possible<br>Value | C<br>Nonmarital<br>(☒Correct Column)<br>HUSBAND | WIFE |
|---|---|---|---|---|
| ☒ Supreme Court of the City of NY | 24 | 800,000 | ☐ | ☐ |
| FN# 24 Case No.: 522947/17. 719 Eastern LLC and Menachem Schneorson vs. SYV LLC and William Elbogen, Esquire. Subject to interest and penalties. | | | | |
| ☒ Loan Sister with Husband | 25 | 200,000 | ☐ | ☐ |
| FN# 25 Sister borrowed $200,000.00 against equity of Eastern Parkway building in approximately 2007-2008. | | | | |
| Totals | | 1,000,000 | | |

| A<br>Contingent Liabilities<br>Check the line next to any contingent debt(s) for which youbelieve you should be responsible. | FNN | B<br>Possible<br>Amount<br>Owed | C<br>Nonmarital<br>(☒Correct Column)<br>HUSBAND | WIFE |
|---|---|---|---|---|
| ☐ Contigent Liability | | 0 | ☐ | ☐ |
| Totals | | 0 | | |
| Total Net Contingent Assets / Liabilities | | 1,000,000 | | |

E: CHILD SUPPORT GUIDELINES WORKSHEET.   Florida Family Law Form 12.902(e). Child Support
Guidelines Worksheet, MUST be filed with the court at or prior to a hearing to establish or modify child
support.  This requirement can not be waived by the parties.

[X] one only]

[X]   A Child Support Guidelines Worksheet IS being filed in this case.  The parties have a minor child(ren) in
common or one of the parties is requesting a modification of a previous court order regarding child support.

[ ]   A Child Support Guidelines Worksheet IS NOT being filed in this case.  There are no minor child(ren) in
common or, if one of the parties is requesting a modification of a previous court order, child support is not
an issue.

**I understand that I am swearing or affirming under oath to the truthfulness of the claims
made in this affidavit and that the punishment for knowingly making a false statement
includes fines and/or imprisonment.**

_M. SCHNEORSON_
**MENACHEM  SCHNEORSON**

, FL
Telephone    :
Telefax         :

STATE OF
COUNTY OF
    Sworn to  and signed before me on _____ 20___ by
MENACHEM  SCHNEORSON

__✓__ Personally known
_____ Produced identification
            Type of identification produced _____

NOTARY PUBLIC - STATE OF
_Grica Madigan_
Notary Printed/ Stamped Name

I certify that a copy of this document was [check all used]: ( X ) Emailed (  ) Mailed
(  ) hand-delivered(   ) Faxed and Mailed to the following person(s): BARRY  S. FRANKLIN. 3590
Mystic Pointe Drive, Aventura, FL, 33180, Fax Number: , Email Address:  on this 29th day of
January, 2018

GRICEL RODRIGUEZ
MY COMMISSION # FF 969115
EXPIRES: April 29, 2020
Bonded Thru Notary Public Underwriters

DEBORAH S. CHAMES
Kluger Kaplan Silverman Katzen & Levine, P.L.
201 S. Biscayne Boulevard, 27th Floor
Miami, FL, 33131
Telephone:
Telefax:
Bar Number: 311448
Designated Email:
Attorney for Husband

# *FOOTNOTES*

## Asset and Liability Footnotes

1  Business formed by Wife during the marriage.
2  Company may not be operative.
3  As of  04/10/18.
4  This is jointly held with parties' daughter.  Balance as of  04/11/18.
5  As of 03/31/18.
6  Cash surrender value.
7  First Mortgage on the marital residence.  As of 04/16/18.
8  Second Mortgage on the marital residence.  Recorded 07/06/17, Instrument No.: 114484686.
9  As of 04/26/18.
10  As of 04/05/18.
11  As of 04/24/18.
12  As of 04/19/18.
13  Line of Credit.  As of 04/09/18.
14  As of 04/05/18.
15  As of 04/20/18.
16  Living expenses.  This debt increases every month. $1,000.00 monthly deposited into the Husband's pay pal account.
17  As of 05/15/18. This amount includes work-in-progress.
18  Daughter's school.
19  As of 04/19/18
20  Promissory Note as of 11/10/17 to pay legal fees.
21  Property in New York.  Amount undetermined at this time.
22  Past due taxes on marital residence for 2017.
23  Per <zillow.com> as of 01/29/18. Titled in the Husband's name.
24  Case No.: 522947/17. 719 Eastern LLC  and Menachem Schneorson vs. SYV LLC  and William Elbogen, Esquire. Subject to interest and penalties.
25  Sister borrowed $200,000.00 against equity of Eastern Parkway building in approximately 2007-2008.

## Income and Expense Footnotes

1  This is based on the Husband's income for 2017.  The Husband's employment for 2018 is the same.
2  This is based on the Husband's income for 2017.  Income

# *FOOTNOTES*

Income and Expense Footnotes

is from Shaikes, LLC; Victor Wine; and other miscellaneous jobs.

3   Husband receives medicaid and food stamps approximately $400.00 - $500.00 monthly.

4   The Husand currently drives a leased 2018 Hyundai Sonata.

5   Currently under Florida Medicaid.

6   Payment is made to Wells Fargo for the first mortgage on the property located 1125 N.W. 6th Street, Hallandale, FL 33009 t

7   $3,600.00 annually.

8   $4,000.00 annually.

9   This expense includes internet.

10   This expense is for the Husband only.

11   Husband buys his clothes at Goodwill.

12   LA Fitness.

13   Mr. Kaye loans the Husband $1,000.00 monthly for his living expenses.

**EXHIBIT "H"**

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

IN RE: THE MARRIAGE OF             CASE NO.: FMCE-17-011569

MARGALIT SCHNEORSON,             FAMILY DIVISION
    Petitioner/Counter-Respondent/Wife,

and

MENACHEM SCHNEORSON,
    Respondent/Counter-Petitioner/Husband,

and

BARRY A. KAYE
    Third Party Defendant.

_____/

**TEMPORARY INJUNCTIVE RELIEF ORDER FREEZING ANY AND ALL
FUNDS HELD BY THIRD PARTY DEFENDANT BARRY KAYE AND/OR
CROWN TRAVEL INTERNATIONAL (HEREINAFTER "CROWN TRAVEL")
OR ANY PERSON OR ENTITY CONNECTED TO THE HUSBAND, BARRY
KAYE OR CROWN TRAVEL RELATING TO ALL OR ANY PORTION OF THE
SALES PROCEEDS FROM THE SALE OF 1257 OCEAN PARKWAY,
BROOKLYN, NEW YORK 11230**

THIS CAUSE, having come before the Court initially on an *ex-parte* basis

on October 14, 2019 (or shortly thereafter), upon the Petitioner/Counter-

Respondent/Wife, MARGALIT SCHNEORSON's Verified *Ex-Parte* Motion for

Temporary Injunction Including Freeze Order, et. al. and for Other Relief Incident

Thereto against the Respondent/Counter-Petitioner/Husband, MENACHEM

SCHNEORSON, et. al. to freeze any and all accounts in the name of Crown Travel

and for other relief incident thereto (hereinafter "Injunctive Relief Motion"). When

filed with the Court, the Wife's Verified *ex-parte* Injunctive Relief Motion was supported by the sworn Affidavit of Michael Cohen. Virtually all of the subject matter contained in the Wife's Verified Injunctive Relief Motion dated October 14, 2019, was covered during the special set evidentiary hearing on the Wife's contempt motion with the Husband having had the opportunity to cross examine the Wife's witnesses and testify himself at that hearing. The Court also takes judicial notice of all prior Court Orders entered in this case and the overall activity that has occurred to date.

Based upon the foregoing and the Court being otherwise fully advised in the premises, the Court makes the following Findings of Fact, Conclusions of Law and Adjudications:

1.    This Court has subject matter jurisdiction and personal jurisdiction over the Wife and the Husband and Third Party Defendant, Barry A. Kaye.

2.    The existing record of prior Court activity in this case, particularly certain Court Orders already entered, establish, among other things, that the Husband has been recalcitrant, dilatory and evasive with discovery and non-compliant with important court orders, resulting in this Court adjudicating entitlement to attorney's fees against him and in favor of the Wife and, on several other occasions, reserving jurisdiction for other attorney's fees and costs that may be further taxable against the Husband.

3.      On July 19, 2019, this Court entered a prior *ex-parte* temporary injunction requiring, inter alia, that the Husband deposit all net sale proceeds from the sale of certain New York real property either into the Court Registry or to forthwith deposit all net sale proceeds into the Trust Account of the Wife's counsel pending further Court Order. The Husband did not comply with this July 19, 2019 Order as no deposits were made as required by Court Order. No appeal was taken as to this appealable interlocutory Order.

4.      This Court also entered a Temporary Relief Order on July 30, 2019 and a Scheduling Order on July 30, 2019. The Husband never complied with either Order.

5.      The special set evidentiary contempt hearing commenced as scheduled on January 9, 2020 and virtually all of the same subject matter contained in the Wife's pending Injunctive Relief Motion was covered during the contempt hearing.

6.      The Court entered an Order on September 24, 2019, enforcing its prior July 30, 2019 Order with regard to the Husband vacating the parties' marital home, which the Husband refused to do until ordered by the Court for a *second time*.

7.      The Court clearly recalls the fact that the relevant portion of the Husband's deposition referenced in the Wife's pending Injunctive Relief Motion (see

paragraph 6 thereof) and prior Injunctive Relief Motion (filed July 10, 2019) was part of the evidence during the temporary relief hearing that took place on both January 8, 2019 and ending on March 19, 2019 (with Closing Argument scheduled for April 15, 2019). Furthermore, the Court recalls that in addition to the Husband's prior deposition of December 11, 2018, in pertinent part, being admitted into evidence during the temporary relief hearing, the Husband also verbally testified during the temporary relief hearing acknowledging that the New York real property which was the subject matter of the Wife's prior Injunctive Relief Motion dated July 10, 2019, was not titled either in the Husband's name, the Wife's name or their joint names, but was an asset of their marital estate. Moreover, the Wife's in-court testimony on this issue was credible, as was the testimony of Michael Cohen, both of whom were cross-examined by the Husband during the January 9, 2020 contempt hearing.

8.      The Husband's prior deposition and in Court testimony along with the other evidence admitting during the contempt hearing more than sufficiently establish that Third Party Defendant, Barry Kaye, has always been very much involved in the parties' finances, and has engaged in financial dealings with the Husband frequently during the parties' marriage and during these divorce proceedings. Among other things, the Court takes judicial notice of the "bogus" second mortgage on the parties' former marital home as was previously determined by this Court and that was removed by the Court's prior Default Final Judgment against Barry Kaye.

9.    The evidence also shows that Barry Kaye paid the Husband's third lawyer Sarah Shulevitz, Esq., $4,500.00 from a Wells Fargo Account #4156, titled in the name of Crown Travel, containing approximately $236,000.00. Again, based upon the Court's prior Temporary Injunctive Relief Order, dated July 19, 2019, the Husband was ordered to deposit approximately $300,000.00 of sales proceeds from the 1257 Ocean Parkway sale either into the Wife's counsel's Trust Account or the Court Registry.

10.   Also, admitted into evidence during the January 9, 2020 contempt hearing was a document from July 29, 2013 showing Menachem Schneorson associated with Barry Kaye's alleged company, Crown Travel International. Although the Husband has asserted under oath not to be involved with Crown Travel, this document indicates otherwise. On its face, the document confirms the Husband, Menachem Schneorson, applying for an EIN (employment identification number) on behalf of the company, Crown Travel International.

11.   The Husband during his in-court testimony at the January 9, 2020 contempt hearing essentially acknowledged constructive receipt of the $150,000.00 proceeds from the sale of the 1257 Ocean Parkway Brooklyn, New York 11230 property but claimed he or someone acting on his behalf spent $8,000.00 on undisclosed expenses leaving a balance of $142,000.00.

12.    All of the elements to obtain the injunctive relief requested by the Wife against the Husband, Barry Kaye and Crown Travel have been sufficiently demonstrated to the Court.

13.    The public policy of this state is to certainly protect marital assets from being hidden, improperly transferred or dissipated during the pendency of divorce litigation.

14.    Toward that end, the relief sought by the Wife in her sworn Injunctive Relief Motion is simply to secure and protect marital assets in this long term marriage demonstrably shown to be concealed by the Husband and held in whole or in part, actually or constructively, by Third Party Defendant, Barry Kaye and/or Crown Travel.

15.    Consistent with the prior July 19, 2019 Injunctive Relief Order, the Court further finds that unless the reasonable relief sought herein is granted, then the Wife will likely suffer continued irreparable harm.

16.    The Court finds that the Wife has no adequate remedy at law with respect to this situation.

17.    The Wife's Verified request for a Temporary Injunction Including Freeze Order as to any and all accounts in the name of Barry Kaye, Crown Travel or otherwise holding all or any portion of the sale proceeds from the sale of the

property located at 1257 Ocean Parkway, Brooklyn, New York 11230 are hereby frozen pending further order of this Court.

18.     The Husband, individually and on behalf of any and all entities in which he has any interest, and Barry A. Kaye, individually and on behalf of any and all entities in which he has any interest, are hereby **Enjoined** and **Restrained** from any act of further dissipation, transfer, waste, mismanagement, hiding, pledging, or otherwise disposing of funds regarding all or any portion of the sale proceeds from the property located at 1257 Ocean Parkway, Brooklyn, New York 11230.

19.     Within five (5) days of the date of this Order, the Husband and Third Party Defendant Barry Kaye shall provide Wife's counsel with bank statements and all other relevant documentation showing the whereabouts of the sale proceeds from the sale of 1257 Ocean Parkway, Brooklyn, New York 11230 together with a full written accounting of the sale proceeds in question.

20.     From the date of this Order, no disbursements or withdrawals shall be made from any such account(s) absent further written Court Order. A Certified Copy of this Injunctive Relief Order shall be immediately furnished to all financial institutions where the funds may be located to safeguard the funds.

21.     Based upon the totality of circumstances here, the Court determines at this time that the Wife's posting of the prior cash bond associated with the July 19,

*Schneorson v. Schneorson*
*Case No.: FMCE-17-011569*
*Page 8 of 8*

2019 Order, applies here so as not to require an additional bond to be posted in support of this Freeze/Preservation Order.

22.   This Court retains and reserves jurisdiction of this case for the purpose of enforcing and modifying the terms of this Order and entering further Orders as may be necessary.

ORDERED in Chambers, Broward County, Ft. Lauderale, Florida, this _____ day of February, 2020.

PETER HOLDEN

FEB 05 2020

A TRUE COPY

_____
CIRCUIT COURT JUDGE

Copies to:

1. **Barry S. Franklin, Esq.,** 3590 Mystic Pointe Drive, Aventura, Florida 33180; Email: BFranklin@barrysfranklin.com.
2. **Menachem Schneorson, pro se,** 1025 East Hallandale Beach Boulevard, 15-135, Hallandale Beach, FL 33609
   Email: Schneorsonm@gmail.com
3. **Barry Kaye,** 331 Kingston Avenue, Brooklyn, New York, 11213
   Email: barryakaye@gmail.com

Filing # 140800851 E-Filed 12/21/2021 06:55:05 PM

**EXHIBIT "G"**

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>FMCE17011569</u>  DIVISION <u>36</u>  JUDGE <u>Susan Greenhawt</u>

**Margalit Schneorson**

Plaintiff(s) / Petitioner(s)

v.

**Menachem Schneorson**

Defendant(s) / Respondent(s)

_____/

## ORDER DENYING HUSBAND'S VERIFIED EMERGENCY MOTION TO COMPEL WIFE TO MAINTAIN STATUS QUO PURSUANT TO ADMINISTRATIVE ORDER NO. 2019-15-UFC AND GRANTING WIFE'S VERIFIED MOTION FOR PARTIAL EARLY EQUITABLE DISTIBUTION AS TO THE PARTIES' FORMER MARITAL HOME AND FOR OTHER RELIEF INCIDENT THERETO AND DEFERRING RULING ON THE WIFE'S MOTION FOR CONTEMPT (INCLUDING ALL SUPPLEMENTS THERETO) AGAINST THE HUSBAND FOR NON-PAYMENT OF SUPPORT

THIS CAUSE came before the Court for a special appointment hearing on November 18, 2021, on the Wife's Motion for Contempt, Enforcement, and Sanctions Against the Husband for his Deliberate Failure or Refusal to Comply with this Court's July 30, 2019 Order and for Attorney's Fees and Costs (including all supplements thereto filed by the Wife); the Wife's Motion for Early Equitable Distribution as to the Parties' Former Marital Home and for Other Relief Incident Thereto and the Husband's Verified Emergency Motion to Compel Wife to Maintain Status Quo Pursuant to Administrative Order No.: 2019-15-UFC. The hearing took place via Zoom and both parties were present along with their respective counsel of record, Barry S. Franklin, Esq. of the Law Firm of Barry S. Franklin & Associates, P.A., representing the Wife, and Steve Berzner, Esq., representing the Husband. Based upon the numerous Court Orders that have been entered against the Husband and not complied with by the Husband and hearing from both parties and their

Case 1:22-cv-03319-DG-VMS Document 1 Filed 06/06/22 Page 50 of 136 PageID #: 50
Case 1-22-40494-jmm Doc 10 Filed 03/18/22 Entered 03/18/22 16:32:39

CaseNo: FMCE17011569
Page 2 of 6

respective counsel of record, the Court makes the following FINDINGS and ADJUDICATIONS:

1. The Husband's Verified Emergency Motion to Compel Wife to Maintain Status Quo Pursuant to Administrative Order No.: 2019-15-UFC is DENIED.

2. The Wife's Motion for Early Equitable Distribution as to the Parties' Former Marital Home and for Other Relief Incident Thereto is GRANTED as set forth hereinbelow.

3. The Wife's Motion for Contempt, Enforcement, and Sanctions Against the Husband for his Deliberate Failure or Refusal to Comply with this Court's July 30, 2019 Order and for Attorney's Fees and Costs is DEFERRED. The Court will entertain the Wife's Contempt Motion again either after the sale of the former marital home and the accounting of the net sale proceeds to be derived therefrom or at the trial of this case, whichever shall occur first.

4. Both parties and their counsel agreed on the Record that even after the permanent replacement Judge is assigned to this Division that Judge Greenhawt, as a senior Judge, would continue to preside over all aspects of this litigation including the trial of this cause. As announced on the Record during the November 18, 2021 hearing and at prior hearings as well, Judge Greenhawt recognizes how long this case has been pending, the complexities of it and the need for ultimate resolution.

5. There is a valid, enforceable and binding Temporary Relief Order that was entered by the predecessor Judge in this Division on July 30, 2019. Pursuant to that Temporary Relief Order, the Husband was obligated to pay $3,000.00 per month ($2,000.00 per month in temporary alimony and $1,000.00 per month towards alimony arrearages) to the Wife and he has not paid one penny of that obligation.

6. Pursuant to the same Temporary Relief Order entered on July 30, 2019, the Husband was also obligated to pay $10,000.00 towards the Wife's temporary attorney's fees, suit monies and costs. The Husband has not paid one penny toward that obligation in the nature of support.

CaseNo: FMCE17011569
Page 3 of 6

7. On January 6, 2020, the Court entered an Order and corresponding Money Final Judgment obligating the Husband to pay the principal amount of $111,199.60 in attorney's fees, suit monies and costs for services rendered on the Wife's behalf through June 28, 2019. Those fees/costs were also in the nature of support and not one penny of that obligation has been paid by the Husband.

8. Additionally, the Husband was required to maintain/pay the first mortgage on the marital home located at 1125 NE 6th Street, Hallandale, Florida 33009 as well as to pay the real estate taxes and homeowner's insurance. The Husband has not made any mortgage payments nor has he paid real estate taxes, insurance premiums or any other expense arising from or relating to the former marital home for years. Previously, Court Orders were entered on May 8, 2019 and January 9, 2020 requiring the Husband to pay or reimburse the Wife the unpaid mortgage payments and real estate taxes advanced by Michael Cohen to avoid the home going into foreclosure. The Husband has not paid or reimbursed Michael Cohen for those house-related payments that he made to keep the property from going into foreclosure.

9. As a result of this Court granting the Wife's Motion for early equitable distribution and denying the Husband's responsive Motion trying to prevent the sale, the Wife has the right to sell the home to whomever she wants *nunc pro tunc* as of November 18, 2021 provided the home is sold for fair market value. The Wife's counsel announced during the hearing that the Wife obtained an appraisal of the home and the property appraised at $345,000.00.

10. Should the Wife sell the former marital home located at 1125 NE 6th Street, Hallandale, Florida 33009, half of the net sale proceeds shall be considered in partial satisfaction of the aforementioned monies due and owing from the Husband to the Wife though this determination is without prejudice to be revisited by the Court at the time of final hearing if the parties are unable to settle their litigation out-of-court before then.

11. The Wife has the unconditional right, as orally pronounced by the Court on the

Record during the November 18, 202 hearing, to determine how the one-half of the net sale proceeds attributable to the Husband's outstanding obligations in the nature of support are partially satisfied. In other words, it shall be up to the Wife as to whether the half of the net sale proceeds attributable to the Husband are used to pay all of his alimony arrearage first and then be applied against his attorney's fees obligations or reimbursement of the monies the Husband owes for the unpaid mortgage, real estate taxes and insurance on the home. Said differently, if the Wife chooses, half of the net sale proceeds attributable to the Husband may be applied 33.3% towards the Husband's unpaid temporary alimony obligation; 33.3% towards the Husband's unpaid temporary attorney's fees and costs obligation; and 33.3% toward the Husband's obligation to reimburse the Wife for his unpaid mortgage, real estate and homeowner's insurance obligations through the date of sale.

12. The final determination on the amount of credit to be given the Husband if the home is sold shall be determined at the time of final hearing. Likewise, the ultimate/final amount of money to be reimbursed to Michael Cohen from the sale proceeds shall be reserved for the final hearing. However, if the Wife and Michael Cohen can agree in writing as to Michael Cohen's reimbursement then Michael Cohen can be paid from the net sale proceeds without the need for further court approval.

13. If the Wife follows through with the sale of the former marital home located at 1125 NE 6th Street, Hallandale, Florida 33009 in accordance with this Court's Order, then after the reasonable and necessary expenses of the sale have been paid, the remaining net sale proceeds shall be transferred to be held in the trust account of the Law Firm of Barry S. Franklin & Associates, P.A. also in accordance with the terms and conditions of this Order. To be clear, it shall not be necessary for the Wife's counsel to obtain further court approval before making distributions to either the Wife directly, Michael Cohen, directly, or to either one of them subject to the ultimate accounting that must be made available for the Court for use either at a later contempt hearing or the trial, whichever shall occur first.

CaseNo: FMCE17011569
Page 5 of 6

14. The Wife's claim for attorney's fees regarding the Motions involved that were heard on November 18, 2021 are expressly reserved by the Court for later determination.

15. The Court further reserves jurisdiction over all parties (for enforcement purposes of this Order).

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>12-21-2021</u>.

FMCE17011569 12-21-2021 11:57 AM

<u>FMCE17011569 12-21-2021 11:57 AM</u>
Hon. Susan Greenhawt
**CIRCUIT JUDGE**
Electronically Signed by Susan Greenhawt

**Copies Furnished To:**
BARRY S FRANKLIN , E-mail : Jessica@barrysfranklin.com
BARRY S FRANKLIN , E-mail : Barry@barrysfranklin.com
Barry A. Kaye , E-mail : barryakaye@gmail.com
Carlos D Lerman , E-mail : Carlos@lwlawfla.com
Carlos D Lerman , E-mail : Ina@lwlawfla.com
Carlos D Lerman , E-mail : Lizbeth@lwlawfla.com
David Graubard, Esq. , E-mail : dgraubard@keragraubard.com
Deborah S Chames , E-mail : SZamora@KlugerKaplan.com
Deborah S Chames , E-mail : Service@klugerkaplan.com
Deborah S Chames , E-mail : DChames@KlugerKaplan.com
Grace M Casas , E-mail : lawofficecasasgrace@yahoo.com
Grace M Casas , E-mail : gcasas99@yahoo.com
Gricel Rodriguez , E-mail : GRodriguez@KlugerKaplan.com
Jaimee L Braverman , E-mail : service@lgplaw.com
Jaimee L Braverman , E-mail : jlb@lgplaw.com
Jaimee L Braverman , E-mail : amm@lgplaw.com
Janis F Carlson Esq , E-mail : rocknjann@aol.com
Janis F Carlson Esq , E-mail : janisfcarlson@aol.com
Jeannette Watkin , E-mail : Jeannette@jwatkinlaw.com
Justin Zeig Esq. , E-mail : dhernandez@zeiglawfirm.com
Justin Zeig Esq. , E-mail : justin@zeiglawfirm.com
Justin Zeig Esq. , E-mail : eservice@zeiglawfirm.com
Leer Thompson, Esq. , E-mail : Leer@mpjustice.com

Menachem Schneorson , E-mail : Menachemcourt@gmail.com
Menachem Schneorson , E-mail : SchneorsonM@gmail.com
Menachem Schneorson , E-mail : SchneorsonM@Gmail.com
Nediva Schwarz , E-mail : NedivaSchwarz1@yahoo.com
Noson Kopel , E-mail : nakopel1@gmail.com
Paul A. Humbert , E-mail : pa@pahumbertlaw.com
Paul A. Humbert , E-mail : smvergara@pahumbertlaw.com
Paul A. Humbert , E-mail : sarahp@pahumbertlaw.com
Robert Stambaugh , E-mail : LSRT@centerstatebank.com
Sara Sharon Shulevitz , E-mail : sarashulevitzesq@gmail.com
Sara Sharon Shulevitz , E-mail : bjbrlaw@yahoo.com
Scott Mager , E-mail : filings@mpjustice.com
Scott Mager , E-mail : yonathan@mpjustice.com
Scott Mager , E-mail : cecile@mpjustice.com
Steven L Berzner , E-mail : berznerlaw@gmail.com
Steven L Berzner , E-mail : berznerlawpa@gmail.com
Steven S. Saber , E-mail : saberlaw@att.net

## EXHIBIT "F"

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

IN RE: THE MARRIAGE OF         CASE NO.: FMCE-17-011569

MARGALIT SCHNEORSON,      FAMILY DIVISION
    Petitioner/Counter-Respondent/Wife,

and

MENACHEM SCHNEORSON,
    Respondent/Counter-Petitioner/Husband,

and

BARRY A. KAYE
    Third Party Defendant.

_____/

Filed In Open Court,
CLERK OF THE CIRCUIT COURT
ON ____1 6 2020____
BY _____

### ORDER GRANTING WIFE'S MOTION TO COMPEL COMPLIANCE WITH SCHEDULING ORDER DATED JULY 30, 2019 AND FOR SANCTIONS AGAINST THE HUSBAND AND MONEY FINAL JUDGMENT IN FAVOR OF THE WIFE AND AGAINST THE HUSBAND

THIS CAUSE came before the Court on January 6, 2020 on the Wife's Motion entitled: Motion to Compel Compliance with Scheduling Order Dated July 30, 2019 and for Sanctions Against the Husband. After hearing legal argument of counsel and being otherwise fully advised in the premises, the Court makes the following **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ADJUDICATIONS:**

    1)    Along with this Court's Temporary Relief Order dated July 30, 2019, the Court also entered a corresponding Scheduling Order dated July 30, 2019. The Scheduling Order directly related to the Wife's temporary fee and cost claims and obligated the Husband within a specific time frame to object or accept the Wife's fees sought within the produced billing statements. Specifically, the Scheduling Order dated

July 30, 2019 provided the Husband with 15 days to formulate written objections, if any, to the Wife's counsel's billing entries as contained within the billing statements that were produced, admitted into evidence during the Temporary Relief Hearing and otherwise made a part of the court record.

2)    To date, the Husband has not complied with the aforementioned Scheduling Order and the time frame for compliance has long since expired.

3)    The Husband has had more than enough time to address the Scheduling Order dated July 30, 2019 and comply with it. For most of the time since the entry of the Scheduling Order, the Husband has been represented by counsel but even if he were representing himself, the Husband would still be obligated to fully comply with this Court's Order. Being a *pro se* litigant and not complying with this Court's Scheduling Order is neither an excuse nor a defense. *See, Balch v. HSBC Bank, USA, N.A.,* 128 So. 3d 179, 182 (Fla. 5th DCA 2013) (*pro se* litigants should be treated no differently or more leniently than litigants represented by counsel; once a party chooses to represent himself, he cannot expect favored treatment from the court); *Millen v. Millen,* 122 So. 3d 496, 497 (Fla. 3rd DCA 2013) ("It is a mistake to hold a *pro se* litigant to a lesser standard than a reasonably competent attorney.") (quoting *Kohn v. City of Miami Beach,* 611 So. 2d 538, 539 (Fla. yct DCA 1992) (a party's self-representation does not relieve the party of the obligation to comply with any appropriate rules of civil procedure); *Anderson v. School Board of Seminole County,* 830 So. 2d 952, 953 (Fla. 5th DCA 2002) ("*Pro se* litigants, however, should not

be treated differently from litigants in similar situations who are represented by counsel and are charged with knowledge of those rights."); *Stueber v. Gallagher*, 812 So. 2d 454. 457 (Fla. 5th DCA 2002) ("In Florida, *pro se* litigants are bound by the same rules that apply to counsel.'"); *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) ("A *pro se* litigant should not be held to a lesser standard than a reasonably competent attorney because applying a lesser standard would only encourage continued frivolous litigation.").

4)    Furthermore, at the Temporary Relief Hearing which took place on January 8, 2019; March 19, 2019; April 15, 2019; and June 10, 2019, no testimony or other evidence was presented to rebut, controvert, or otherwise call into question the services rendered by the Wife's counsel as reflected by the Law Firm of Barry S. Franklin & Associates, P.A.'s time record/billing statements that were introduced into evidence during the Temporary Relief Hearing. The Court has also independently reviewed the Wife's attorney's billing statements and is more than satisfied that the work that was done on the Wife's behalf, as reflected by the billing statements, was reasonable and certainly necessitated by the Husband's recalcitrant and defiant behavior making the discovery process more time consuming and expensive and, even worse, not complying with various Court Orders including the Temporary Relief Order and this particular Scheduling Order at issue.

5)    The Court also had an opportunity to examine the Contract for Legal Services between the Wife and her counsel previously admitted into evidence. The

*Schneorson v. Schneorson*
*Case No.: FMCE-17-011569*
*Page 4 of 7*

Firm's reasonable and necessary efforts to either secure the Husband's compliance or sanction him for his noncompliance are also taxable against him including to wit: work reflected within the following statements: (1) July 24, 2017 through December 2018; (2) March 12, 2019 (covering fees and costs incurred from December 2018 through February 28, 2019); and (3) January 3, 2020 (covering fees and costs incurred from March 1, 2019 through June 28, 2019).

6) The Court finds the attorney's fees and costs incurred to be reasonable and necessary given the circumstances of this litigation.

7) Specifically, the number of hours expended were reasonable and the hourly rates were also reasonable and consistent with community standard.

The reasonable hourly rates and reasonable amounts expensed are as follows:

UPDATE SUMMARY OF FEES (from July 24, 2017 through June 28, 2019)

| Timekeeper | Fees Billed | Hours Billed | Effective Bill Rate |
|---|---|---|---|
| Barry S. Franklin, attorney | $69,680.00 | 127.60 | $546.08 |
| Olivia Retenauer, attorney | $28,800.00 | 72.00 | $400.00 |
| Nadine Goodman, attorney | $6,440.00 | 16.10 | $400.00 |
| Jessica Franklin, paralegal | $1,725.00 | 13.80 | $125.00 |
| Andres Amaya, paralegal | $400.00 | 3.20 | $125.00 |
| Nicola Franklin, paralegal | $250.00 | 2.00 | $125.00 |
| Total | $107,295.00 | 234.70 | |

*UPDATE SUMMARY OF COSTS (from July 24, 2017 through June 28, 2019)*

| | | |
|---|---|---|
| Filing Fee 9/05/2017 | | $423.32 |
| Subpoena on Menachem Schneorson 10/24/2017 | | $170.00 |
| Subpoena on Kluger Kaplan law firm 12/20/2017 | | $30.00 |
| Issuance of Summons on Menachem 9/25/2018 on Amended | | $10.35 |
| Broward County to record lis pendens | | $9.00 |
| Process Service Subpoena Barry Kaye 9/27/2018 | | $100.00 |
| Court Reporter and transcript of Menachem's deposition 12/17/2018 | | $767.50 |
| Court Reporter at hearing 1/08/2019 | | $257.50 |
| Court Reporter at hearing 2/25/2019 | | $95.00 |
| Transcript of hearing 2/25/2019 | | $45.50 |
| Court Reporter at hearing 3/19/2019 | | $225.00 |
| Court Reporter at hearing 4/15/2019 | | $95.00 |
| Transcript of hearing 4/15/2019 | | $504.00 |
| Broward County to record quitclaim deed | | $19.20 |
| Postage | | $64.57 |
| Copying/Scanning | | $929.25 |
| Parking | | $140.00 |
| FedEx to Judge Holden 4/11/2019 | | $19.41 |
| | Total | $3,904.60 |

**GRAND TOTAL FEES AND COSTS FOR July 24, 2017 through June 28, 2019** **$111,199.60**

Note 1: See Order for Temporary Alimony Support, Temporary Exclusive Use of the Marital Home, and Temporary Attorney Fees dated 7/30/2019 ordering partial payment by the Husband of $10,000.00 (remains unpaid as of today 1/03/2020).

8)     Thus, the overall total attorney's fees and costs reasonably incurred associated with BARRY S. FRANKLIN & ASSOCIATES, P.A.'s representation of the Wife in this Case No. FMCE 17-011569 and covered by this Order/ Money Final

Judgment is $111,199.60. As such, the Court orders that $111,199.60 be paid to the Wife by the Husband as set forth in this Order and Money Final Judgment.

9)      Given the Husband's non-compliance with the Family Court Rules of Procedure and various Court Orders including this subject Scheduling Order, the Court finds, and therefore adjudicates, that the Wife is entitled to the entry of a Money Final Judgment against the Husband for all of her fees and costs incurred from July 24, 2017 through June 28, 2019 as covered by the Temporary Relief Hearing and contemplated by the related Scheduling Order. While the Court determines that the Wife is entitled to the entry of this Money Final Judgment for her fees and costs during the aforementioned time-frame, the Court must, however, reserve jurisdiction on the nature and extent of the Husband's ability to pay for contempt purposes, because clearly the fees and costs involved here are in the nature of support and subject to the Court's contempt power. See *Fishman v. Fishman,* 656 So. 2d 1250 (Fla. 1995); and *Cole v. Cole,* 95 So. 3d 369 (Fla. 3d DCA 2012)(Wife entitled to the entry of a Money Final Judgment for the fees and costs incurred with a separate amount adjudicated as subject to the Court's contempt power based upon the Husband's ability to pay for contempt purposes).

Based upon the foregoing Findings of Fact and Conclusions of Law, it is Thereupon ADJUDGED:

10)      The Wife, Margalit Schneorson, 1125 NE 6th Street, Hallandale, FL 33009, shall recover from her Husband, Menachem Schneorson, at his last known address, 1025 East Hallandale Beach Boulevard, 15-135, Hallandale Beach, FL, 33609,

*Schneorson v. Schneorson*
*Case No.: FMCE-17-011569*
*Page 7 of 7*

the principal sum of **$111,199.60**  (which includes attorneys' fees and costs incurred by

the Wife from July 24, 2017 through June 28, 2019) for which let execution issue.

11)    It    is    further    ordered    that    Respondent/Husband,    MENACHEM

SCHNEORSON, within twenty (20) days from the entry of this Money Final Judgment,

to timely complete Form 1.977, a blank copy of which is attached hereto as Exhibit "A"

and incorporated by reference herein as though set out in full. Upon completion, the

form shall be filed with the Court and a copy served upon the Law Firm of Barry S.

Franklin & Associates, P.A.

DONE AND ORDERED in Chambers, Broward County, Florida, this _6_ day

of January, 2020.

CIRCUIT COURT JUDGE

Copies to:

1. **Barry S. Franklin, Esq.**, 3590 Mystic Pointe Drive, Aventura, Florida
   33180; Email: BFranklin@barrysfranklin.com.
2. **Menachem Schneorson, pro se**, 1025 East Hallandale Beach Boulevard, 15-
   135, Hallandale Beach, FL 33609
   Email: Schneorsonm@gmail.com

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

IN RE: THE MARRIAGE OF

CASE NO.:   FMCE-17-011569

MARGALIT SCHNEORSON,
          Petitioner/Counter-Respondent/Wife,

FAMILY DIVISION

and

MENACHEM SCHNEORSON,
          Respondent/Counter-Petitioner/Husband,

and

BARRY A. KAYE
          Third Party Defendant.
_____/

## FORM 1.977 FACT INFORMATION SHEET FOR INDIVIDUALS

Full legal name:  _____

Nickname or
Alias:  _____

Residence
Address:  _____

Mailing address
(if different):  _____

Telephone
numbers:          Home:  _____      Business:  _____

Name of employer:  _____

Address of Employer:  _____

Position or Job
Description:  _____

Rate of pay:  $ _____ per _____   Avg. paycheck:  $ _____ per _____

Average commissions
or bonuses:          $ _____ per _____

Commissions or bonuses
are based on:  _____

Other personal income:  $ _____   From:  _____

*Exhibit "A"*

Savings Account at: _____ Account No.: _____

For real estate (land) you own or are buying:

Address: _____

All names on title: _____

Mortgage owed to: _____

Balance owed: _____

Monthly payments: _____
(Attach a copy of the deed or mortgage or list the legal description of the property on the back of this sheet or an additional sheet if necessary.  Also provide the same information on any other property you own or are buying.)

For all motor vehicles you own or are buying:

Year/Make/Model: _____ Color: _____

VIN: _____ Tag No. _____ Mileage: _____

Name(s) on title: _____ Present value: $ _____

Loan owed to: _____

Balance of loan: $ _____

Monthly payment: $ _____
(List all other automobiles as well as other vehicles, such as boats, motorcycles, bicycles, or aircraft on the back of this sheet or an additional sheet if necessary.)

Have you ever give, sold, loaned or transferred any real property or personal property worth more than $100 to any person in the last year?  If your answer is "yes", describe the property, market value and sale price and give the name and address of the person who received the property.

Does anyone owe you money?  Amount owed: $ _____
_____

(Explain details on the back of this sheet or an additional sheet if necessary.)

Social Security No.: _____ Birth date: _____

Drivers License No.: _____

Marital Status: _____ Spouse's Name: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SPOUSE RELATED PORTION

Spouse's address (if different): _____

Spouse's Social Security No.: _____ Birth date: _____

Spouse's Employer: _____

Spouse's Avg. paycheck or income: $ _____ Per _____

Other family income: _____

(Explain details on back of this sheet or an additional sheet if necessary.)

Describe all other accounts or investments you may have including stocks, mutual funds, savings bonds or annuities, on the back of this sheet or on an additional sheet if necessary.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Names and ages of all of your children (and addresses if not living with you): _____

Child support of alimony paid: $ _____ Per _____

Names of others you live with: _____

Who is head of your household:   You _____   Your spouse _____   Other person: _____

Checking Account at: _____ Account No.: _____

_____ _____

Name and address of person owing money:  _____

Reason money is owed:  _____

Please attach copies of the following:

    a.    Your last paystub.
    b.    Your last three statements for each bank, savings, credit union or other financial account.
    c.    Your motor vehicle registration and title(s).
    d.    Any deeds or titles to any real or personal property you own or are buying, or leases to property you are renting.
    e.    Your financial statements, loan applications or lists of assets and liabilities submitted to any person or entity within the last 3 years.
    f.    Your last 2 income tax returns filed.

      UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.

_____
MENACHEM SCHNEORSON

STATE OF _____
COUNTY OF _____

    The foregoing instrument was acknowledged before me this _____ day of _____ 2020 by _____ who is personally known to know me or has produced _____ as identification and who did/did not   take an oath.

WITNESS my hand and official seal, this _____ day of _____ 2020.

_____
NOTARY PUBLIC

My commission expires:

**YOU MUST MAIL OR DELIVER THIS COMPLETED FORM, WITH ALL ATTACHMENTS, TO THE JUDGMENT CREDITOR OR THE JUDGMENT CREDITOR'S ATTORNEY, BUT DO NOT FILE THIS FORM WITH THE CLERK OF COURT.**

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing
and correct copy of the original as it appears
and file in the office of the Circuit Court Clerk
County, Florida.
    WITNESS my hand and Official Seal
Florida, this the _____ day of _____

JAN 0 6 2020

_____
Deputy Clerk

Broward County Commission
Deed Doc Stamps: $612.50

**EXHIBIT "E"**

FMCE 17-11569
(36)

**Prepared by and return to:**
Barry S. Franklin, Esquire
Barry S. Franklin & Associates, P.A.
3590 Mystic Pointe Drive
Aventura, Florida 33180



NOV 19 2019

FILED

### QUITCLAIM DEED

THIS QUITCLAIM DEED executed this 19th day of November, 2019, by first parties, MENACHEM SCHNEORSON, a married man, and MARGALIT SCHNEORSON, a married woman, (hereinafter referred to as the "Grantors") whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009, to second party, MARGALIT SCHNEORSON, a married woman (hereinafter referred to as the "Grantee"), whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009.

(The designation "Grantors" and "Grantee" as used herein shall include said parties, their heirs, successors and assigns and shall include singular, plural, masculine, feminine or neuter as required by context.)

Witnesseth, that the said first parties/Grantors, for the sum of Ten Dollars and No/100 ($10.00), and other good and valuable consideration paid by the second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party/Grantee, their heirs, successors, and assigns, all right, title, interest and claim which the said first parties/Grantors has in and to the following described parcel of land, and improvements, and appurtenances thereto in Broward County, Florida, to wit:

> Legal description: LOT ELEVEN (11) IN BLOCK TEN (10), of GULFSTREAM ESTATES NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 39, PAGE 49, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA
> Abbreviated legal description: GULFSTREAM ESTATES NO 2 39-49 B LOT 11 BLK 10 (hereafter referred to as the "Property").

> The street address for the Property is:
> 1125 NE 6th Street, Hallandale Beach, Florida 33009.

*Page 1 of 3*

Exhibit A

(3)

The Property Appraiser's Parcel Identification Number for
the Property is: 5142 22 37 0410
Folio Number: 708215

IN WITNESS WHEREOF, the Grantors haved signed and sealed these
presents the day and year first above written, sealed and delivered in the presence
of:

WITNESSES:                                 GRANTOR:

_Olivi B_                                  _M. SCHNEORSON_

Print Name: Olivia Retchauer                MENACHEM SCHNEORSON, a
                                           married man, individually

Address of Witness:
133 NE 2nd Ave., Apt. 2104
Miami, FL 33132

_Michael Cohen_
Print Name: Michael Cohen
Address of Witness:
1125 NE 6 ST
Hallandale, FL 33009

STATE OF FLORIDA        )
                        )ss.:
COUNTY OF Broward       )

The foregoing instrument was acknowledged before me this __19__ day of
__November__, 201_9_, by MENACHEM SCHNEORSON, a married man, individually,
who is personally known to me, or who has produced
__FL DL_____ as identification.

MARCUS EVAN STEIN
MY COMMISSION # GG086177
EXPIRES March 22, 2021

                                           Notary Public – State of Florida
                                           Printed Name: Marcus Stein

My Commission Expires: _3/22/21_

*Page 2 of 3*

WITNESSES:

Print Name: Olivia Roterans

Address of Witness:
133 NE 2nd Ave, Apt 2104
Miami, FL 33132

Print Name: Michael Cohen

Address of Witness:
1125 NE 6TST
Hallandale, Fl 33009

GRANTOR:

Margalit Schneorson

MARGALIT SCHNEORSON, a
married woman, individually

STATE OF FLORIDA      )
                      )ss.:
COUNTY OF Broward     )

The foregoing instrument was acknowledged before me this _19_ day of _November_, 2019, by MARGALIT SCHNEORSON, a married woman, individually, who is personally known to me, or who has produced _FL DL_ as identification.

MARCUS EVAN STEIN
MY COMMISSION # GG086177
EXPIRES March 22, 2021

Notary Public – State of Florida
Printed Name: Marcus Stein

My Commission Expires: 3/22/21

## EXHIBIT "D"

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

IN RE: THE MARRIAGE OF            CASE NO.: FMCE-17-011569

MARGALIT SCHNEORSON,            FAMILY DIVISION
     Petitioner/Counter-Respondent/Wife,

and

MENACHEM SCHNEORSON,
     Respondent/Counter-Petitioner/Husband,

and

BARRY A. KAYE
     Third Party Defendant.
_____/

**ORDER GRANTING WIFE'S MOTION TO COMPEL HUSBAND TO EXECUTE
AND DELIVER A DEED TO THE WIFE TRANSFERRING ALL OF HIS
REMAINING RIGHT/TITLE AND INTEREST IN THE MARITAL RESIDENCE
TO THE WIFE AND FOR OTHER RELIEF INCIDENT THERETO**

THIS CAUSE, came before the Court on the Wife's Motion to Compel the

Husband to Execute and Deliver a Deed to the Wife Transferring All of His

Remaining Right/Title and Interest in the Marital Residence to the Wife and for

Other Relief Incident Thereto. The first hearing on the Wife's Motion to Compel the

Husband to Execute and Deliver a Deed to the Former Marital Residence occurred

on October 29, 2019. Taking the matter under consideration, the Court rescheduled

the hearing on the Wife's Motion for November 13, 2019 and that hearing occurred

as well. Based upon this Court's November 13, 2019 Order, the Court rescheduled

the hearing on the Wife's Motion to Compel for Tuesday, November 19, 2019. For all the aforementioned hearings that took place on October 29, 2019; November 13, 2019; and November 19, 2019, the Wife was present in Court along with her counsel of record, either Barry S. Franklin or Olivia Retenauer from the Law Firm of Barry S. Franklin & Associates, P.A. The Husband, MENACHEM SCHNEORSON, was also present in Court for all of the hearings along with the two attorneys representing him, Sara Shulevitz and Grace Casas.

After hearing from both counsel, reviewing the Court file and reviewing documentation confirming the Husband's defaults on the first mortgage that was held by Wells Fargo and then assigned to Specialized Loan Servicing (herein after referred to as SLS), and the Court being otherwise fully advised in the premises, the Court makes the following **Findings of Fact, Conclusions of Law, and Adjudications**:

1)      The Court continues to have subject matter jurisdiction and personal jurisdiction over the parties.

2)      In prior Court hearings under oath, the Husband testified that either he had paid the first mortgage originally held by Wells Fargo (and later assigned to SLS) or that he would be bringing the mortgage current if it had fallen behind and he was in arrears. Similarly, the Husband testified under oath that either he had paid for the necessary insurance coverage as required by the mortgage or that he would

be bringing it current and having it in place so as not to be in default of his first mortgage with Wells Fargo. Additionally, the Husband further testified that either he had paid all of the real estate taxes due and owing on the former marital residence or that he would be paying the real estate taxes and bringing them current.

3)      On July 18, 2019, the Husband applied for a new mortgage loan with Wells Fargo. In that loan application, copy of which has been provided to the Court for review, the following representations were made by the Husband in the loan application that contradict other representations made by the Husband, either in his open court testimony or in his financial affidavits or his later loan modification application also provided to the Court:

a.  He claimed that his monthly income was $2,000.00 in wages and $1,500.00 of self-employment income for a total of $3,500.00 per month.

b.  The Husband claimed that he had $2,000.00 in a checking account and/or cash on hand and a business account with $11,000.00 in it.

c.  The Husband claimed under oath that his hardship began on June 1, 2019 and claimed that his hardship would be resolved by December 1, 2019.

4)      The Court was also provided with a copy of the Husband's request for mortgage assistance/new loan application that he made to SLS. He submitted the

new loan application, according to the application itself as of October 24, 2019. In that loan application he provided the following information under oath materially inconsistent with his older application:

    a. The Husband claimed that he had monthly gross wages of $2,000.00 per month from only one source to wit: Shaike's Catering. He did not disclose in his new loan application his self-employment income from Gold Kosher Catering that was reflected in his earlier loan application.

    b. He claimed in his SLS more recent loan application that two people lived in his household. By Court Order, the Husband was removed from the former marital residence and he provided no sworn testimony or other competent evidence to establish that he has been living with anyone else nor does he have the obligation to legally support anyone except his Wife pursuant to this Court's July 30, 2019 Temporary Relief Order.

    c. The Husband claimed in his SLS loan application that his hardship began in 2017 and he further stated under oath that his hardship situation was "short-term" (under six months).

5)    On July 24, 2019, Wells Fargo sent a letter to the Husband confirming that Wells Fargo was no longer reviewing his account for assistance options. Wells

Fargo made it clear that the reason for this was because Wells Fargo as a lender had not received all of the documentation that the bank needed to complete its review of the Husband's loan modification application. From July 24, 2019 when the Husband received this letter from Wells Fargo, he apparently never provided the missing documentation to Wells Fargo and did not do anything else in terms of the loan modification application until he submitted his loan modification application to SLS on or about October 24, 2019.

6)	On October 7, 2019, the Husband received written notification from SLS stating that the October 7, 2019 correspondence was his "second and final notice" indicating that he had no hazard insurance coverage on the subject property as required by the mortgage. SLS further indicated that SLS planned to buy the insurance to cover the property and that the Husband would be required to pay for the insurance coverage purchased by SLS for any period of time in question. That same letter indicated that the estimated cost of the insurance SLS intended to buy would be $4,931.00 annually.

7)	The following day on October 8, 2019, SLS sent another letter (**Notice of Default and Notice of Intent to Foreclose**) clearly indicating that if all defaults were not brought current and cured by November 10, 2019 that a foreclosure case would be filed and the entire balance due and owing under the note would be accelerated.

8)    Just like the lack of insurance coverage and the mortgage not being paid on a timely basis with a substantial arrearage accumulated, the evidence also reflects that the Husband had not paid the real estate taxes on the former marital home for the last two years.

9)    The Husband has not complied with the July 20, 2019 temporary relief Order as follows:

   a. The Husband has not paid the Wife a $3,000.00 per month in temporary alimony as Court Ordered ($2,000.00 a month plus $1,000.00 a month for his arrearage dating back to July 2017);

   b. The Husband has not paid the temporary fees of $10,000.00 as he was court ordered;

   c. The Husband has not complied with the July 30, 2019 scheduling Order;

   d. The Husband has not complied with the July 19, 2019 Injunctive Relief Order.

10)   Previously in this litigation, the Court had to order the Husband more than once (even after he agreed to do so) to execute an appropriate deed to convey an undivided one-half interest in the former marital home over to the Wife.

11)   The Husband was Court ordered to remove himself from the former marital home as the Wife was awarded exclusive use and possession of the property.

Once again, the record will reflect that the Husband did not comply with this Court's Orders until he was threatened to be forcibly removed from the former personal residence by law enforcement.

12)   The Husband has been given more than enough adequate time to comply with all outstanding Court Orders though he remains non-compliant with each and every one of the Court Orders referenced above to wit: the July 30, 2019 Temporary Relief Orders; the July 19, 2019 Temporary Injunctive Relief Order; the July 30, 2019 Scheduling Order on the Petitioner's Request for Award of Attorney's Fees.

13)   No timely appeals were taken by the Husband and all appellate deadlines have passed.

14)   The Court has reviewed the Wife's Notice of Filing her Affidavit in support of the Wife's Motion to Compel the Husband to Execute and Deliver a Deed as to his remaining interest in the former marital residence.

15)   So as to avoid unnecessary repetition, this Court's Orders from the October 29, 2019 and November 13, 2019 hearings are incorporated by reference herein as though set out in full.

Based upon all other foregoing Findings of Fact and Conclusions of Law, the Court makes the following Adjudications:

16) The Wife's Motion to Compel the Husband to Execute and Deliver a Deed in Lieu of Foreclosure to the Wife Transferring All of His Remaining Right/Title and Interest in the Marital Residence to the Wife and For Other Relief Incident Thereto is GRANTED. Attached hereto as 'Exhibit A' is the deed that the Husband must forthwith duly execute in open court. Should the Husband fail or refuse to comply with this Court Order, it is subject to the Court's contempt power.

17) The Court grants the Wife's entitlement to attorney's fees and costs to be taxed against the Husband with the Court only reserving on the amount to be taxed against the Husband and in favor of the Wife.

18) The Court reserves jurisdiction for enforcement purposes and as otherwise authorized by Florida Law.


DONE AND ORDERED in Chambers, Broward County, Florida, this _____ day of November, 2019.

_____
CIRCUIT COURT JUDGE

A TRUE COPY
NOV 19 2019
PETER......

Copies to:

1. **Barry S. Franklin, Esq.**, 3590 Mystic Pointe Drive, Aventura, Florida 33180; Email: BFranklin@barrysfranklin.com.

2. **Steven S. Saber, Esq.,** 4238 Hollywood Blvd., #203, Hollywood, FL 33021
Email: Saberlaw@att.net.
**Sara Shulevitz, Esq.,** 28 West Flagler Street, Suite 900, Miami, Florida
33130, Email: sarashulevitzesq@gmail.com.
**Grace Casas, Esq.,** 1200 Brickell Avenue Suite 1950, Miami, FL 33134,
Email: lawofficecasasgrace@yahoo.com

**Prepared by and return to:**
Barry S. Franklin, Esquire
Barry S. Franklin & Associates, P.A.
3590 Mystic Pointe Drive
Aventura, Florida 33180

# QUITCLAIM DEED

THIS QUITCLAIM DEED executed this 19th day of November, 2019, by first parties, MENACHEM SCHNEORSON, a married man, and MARGALIT SCHNEORSON, a married woman, (hereinafter referred to as the "Grantors") whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009, to second party, MARGALIT SCHNEORSON, a married woman (hereinafter referred to as the "Grantee"), whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009.

(The designation "Grantors" and "Grantee" as used herein shall include said parties, their heirs, successors and assigns and shall include singular, plural, masculine, feminine or neuter as required by context.)

Witnesseth, that the said first parties/Grantors, for the sum of Ten Dollars and No/100 ($10.00), and other good and valuable consideration paid by the second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party/Grantee, their heirs, successors, and assigns, all right, title, interest and claim which the said first parties/Grantors has in and to the following described parcel of land, and improvements, and appurtenances thereto in Broward County, Florida, to wit:

Legal description: LOT ELEVEN (11) IN BLOCK TEN (10), of GULFSTREAM ESTATES NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 39, PAGE 49, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA Abbreviated legal description: GULFSTREAM ESTATES NO 2 39-49 B LOT 11 BLK 10 (hereafter referred to as the "Property").

The street address for the Property is:
1125 NE 6th Street, Hallandale Beach, Florida 33009.

*Page 1 of 3*

Exhibit A

The Property Appraiser's Parcel Identification Number for
the Property is: 5142 22 37 0410
Folio Number: 708215

IN WITNESS WHEREOF, the Grantors haved signed and sealed these
presents the day and year first above written, sealed and delivered in the presence
of:

WITNESSES:                                    GRANTOR:

Print Name: _Olivia Retcnauer_                _M. SCHNERSON_
                                              MENACHEM SCHNEORSON, a
Address of Witness:                           married man, individually
_133 NE 2nd Ave., Apt. 2104_
_Miami, FL 33132_

Print Name: _Michael Cohen_
Address of Witness:
_1125 NE 6 ST_
_Hallandale, FL 33009_


STATE OF FLORIDA        )
                        )ss.:
COUNTY OF _Broward_     )

        The foregoing instrument was acknowledged before me this _19_ day of
_November_, 201_9_, by MENACHEM SCHNEORSON, a married man, individually,
who   is   personally   known   to   me,   or   who   has   produced
_FL DL_ _____ as identification.

MARCUS EVAN STEIN
MY COMMISSION # GG086177        Notary Public – State of Florida
EXPIRES March 22, 2021          Printed Name: _Marus Skin_

My Commission Expires: _3/22/21_

*Page 2 of 3*

WITNESSES:

Print Name: _Olivia Rovcranı_

Address of Witness:
_133 NE 2nd Ave, Apt 2404_
_Miami, FL 33132_

Print Name: _Michael Cohen_
Address of Witness:
_1125 NE 6 TST_
_1-191 Andale, FL 33009_

GRANTOR:

_Margalt. Schneorson_
MARGALIT SCHNEORSON, a
married woman, individually

STATE OF FLORIDA       )
                       )ss.:
COUNTY OF _Brevard_    )

The foregoing instrument was acknowledged before me this _19_ day of _November_, 201_9_, by MARGALIT SCHNEORSON, a married woman, individually, who is personally known to me, or who has produced _FL DL_ as identification.

MARCUS EVAN STEIN
MY COMMISSION # GG086177
EXPIRES March 22, 2021

Notary Public – State of Florida
Printed Name: _Marcus Sun_

My Commission Expires: _3/22/21_

*Page 3 of 3*

# EXHIBIT "C"

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: FMCE 17-011569 (36)

MARGALIT SCHNEORSON,
     Petitioner,

v.

MENACHEM SCHNEORSON,
     Respondent.

_____/

## ORDER FOR TEMPORARY ALIMONY SUPPORT, TEMPORARY EXCLUSIVE USE OF THE MARITAL HOME, AND TEMPORARY ATTORNEY FEES,

**THIS CAUSE** came on to be heard by the Court on Wife's Motion for Temporary Alimony, Temporary Exclusive Use of the Marital Home and Temporary Attorney's Fees. The Court reviewed the court file and considered the testimony from witnesses, documents introduced, the court having had the opportunity to evaluate and weigh the testimony presented; observe the demeanor, bearing, intelligence, frankness, credibility, and competence of each witness; the interest each witness has in the outcome of the issues presented; and the opportunity to consider the reasonableness of the testimony of the witnesses. In light of all the evidence in the case, the Court having heard/read argument of counsel, and being otherwise advised in the premises:

### The Court Makes the Following Factual Findings:

Testimony over the course of two (2) days proved that the Petitioner, Margalit Schneorson (hereinafter, the Wife), is married to the Respondent, Menachem Schneorson (hereinafter, the Husband). They have been married for twenty-one (21) years, constituting a long term marriage. The Wife has no college education and has not held any meaningful employment during the marriage. The Husband has been the sole and primary provider for the family. They have one (1) child who is nineteen (19) years old.

The Husband testified that he is fifty-two (52) years old, and he solely maintained and controlled the marital household expenses. These expenses include mortgage payments, taxes,

1

utilities, insurance and other household expenses. The Husband stated that the he is employed as a supervisor for Kosher Shaike's Catering, and the Wife is a stay at home mother.

The Wife recently became aware that the Husband took out a second mortgage on the marital home and entered into a loan modification agreement with Wells Fargo Bank on the original mortgage without her consent. The Wife testified that she asked her Husband for information on the mortgage and called the lender, but could not ascertain any information about the status of the mortgage. Records indicate that mortgage payments have been missed. The Husband testified that only one payment was missed, and this was because the bank offered a one-time skip payment financial relief based on a hurricane occurrence in South Florida. The Wife is fearful that the mortgage may be in arrears/default and may be subjected to foreclosure.

A voicemail recording from the Husband was introduced into evidence. This recording was left on the Wife's cellphone in Yiddish. A translation of this recording to English was entered into evidence. On the recording, the Husband can be heard threatening not to pay any future household related expenses.

The Court received testimony relating to the condition of the marital home as being in dire need of repair. The roof is leaking, mold and mildew has started to appear, the water to the home has been shut off for a period of time, the home's insurance has not been documented, taxes on the home are not current, and the mortgage payments have been erratic.

The Husband stated that his Wife's name was omitted from the deed to the marital home; however, her name does appear on the mortgage. While on the witness stand, the Husband agreed that not having the Wife's name on the deed is an error, and she should be placed on the deed to the marital home.

The Wife testified she sought financial assistance from a friend, Mr. Michael Cohen. Mr. Cohen has no ties to this pending litigation. He has, through his own kindness, helped the Wife in financing this litigation. She has incurred large legal bills and has neither money to finance this litigation nor support her daily living expenses.

The Wife's financial affidavit for 2018 indicates she was born on March 11, 1978. It also indicates she is working as a rental property coordinator with a present monthly gross income of $991.00; her monthly expenses total $3,575.00, leaving her with a monthly deficit of $2,584.00. She shows assets of $355,137.00 and debts of $188,132.00. The Wife found employment as a rental property coordinator after filing her petition for dissolution of marriage.

2

The Husband has not filed a financial affidavit for 2018. He filed a financial affidavit for 2017; which indicates he is employed as a supervisor for Kosher Shaike's Catering. He presently earns a monthly net income of $5,051.78, has monthly expenses of $3,545.65, and a monthly deficit of $493.87. He shows assets of $370,293.00 and debts of $368,580.00, for a total net worth of $1,713,000.00. Exhibit Number One (1) entered into evidence gives a breakdown of the house hold expenses. Some of the major monthly household expenses are: $790.00 mortgage: $300.00 in property taxes: $200.00 in electric: $140.00 in water, garbage and sewer: $50 in lawn care: $125.00 in pool maintenance: and $70.00 in cable television. The total major household expenses are one-thousand-six-hundred-seventy-five ($1,675.00) dollars.

The Husband stated that he has over $80,000.00 in credit card debt and is so financially impoverished that he has applied for, and received, government assistance in the form of food stamps. The Husband elaborated that his financial situation is so dire that he has resorted to receiving monthly cash handouts from friends so he can make his financial obligations. This stream of income has not been documented or verified by the Husband.

The Court received testimony about a property/building in Brooklyn, New York, which is not titled in the Husband's name, or his Wife's name, or their joint names, but is an asset of their marital estate. The value of this building is listed on the Husband's financials at eight-hundred-thousand dollars ($800.000.00). However, there was testimony that this property is worth well over a million dollars ($1,000,000.00).

During cross examination of the Husband, the evidence revealed that he has traveled to foreign countries for up to three (3) weeks, rented cars for transportation and dines at fine restaurants.

Through the introduction of banking records, the Wife was able to establish that even though the Husband had been receiving financial assistance from the government, he has been able to find the funds to make credit card payments on his purported debt of $80,000.00 every month until the time this Divorce Petition was filed. Bank statements show that the Husband made deposits during 2017. The Husband maintains payments or deposits on the following accounts: Wells Fargo Visa number ending in 1231 with a balance in the amount of $33,000.00; deposits and transfers with a balance of approximately $27,000.00 to a Wells Fargo banking account number ending in 5196; deposits and transfers with a balance of approximately $37,000.00 on another Wells Fargo bank account number ending in 2617, payments to his

3

Discover Card of approximately $4,000.00 on account number ending in 7860; and a payment on a Barclays Card of approximately $700.00.

Although requested by the Wife and Court Ordered, the Husband never completed document production for the year 2018; therefore, the Wife was not able to analyze these documents as she was able to do for 2017.

In trying to determine the Husband's financial situation, counsel for the Wife compared it as, "akin to trying to hit a moving target." The Husband has not produced requested documents, filed a financial affidavit for 2018, or updated a financial affidavit despite repeated Court Orders to do so. He has been less than forthcoming with providing documentation that proves his worth, yet every month the Husband finds the money to satisfy his financial obligations.

**Temporary Alimony Along with Exclusive use of the Marital Home:**

The Wife petitioned for temporary alimony support along with temporary exclusive use of the marital home. The Court finds that there is an actual need for temporary alimony, and the husband has the present ability to pay. As stated in the factual basis above, this is a long term marriage in excess of 21 years, the Wife does not have a college degree, and has not worked out of the home during the marriage. The Husband has been the sole provider of all expenses incurred during the duration of this marriage. The Wife had found it untenable to stay in the marital home; so she moved out. She would not have been able to sustain herself financially if it were not for the assistance she has been receiving from a third party friend, Michael Cohen. Mr. Cohen has no relationship to the parties other than trying to assist a friend and has no legal obligation to continue this assistance.

The Husband has not provided updated financials or document production for 2018. The Court is relegated to the Husband's 2017 financial affidavit, testimony, and records introduced into evidence by the Wife, to show the Husband's income, see Shaw v. Nelson, 4 So.3d 740 (Fla. 1st DCA 2009), "where the former husband failed to present evidence that would lead to an accurate calculation of his income, the trial court properly relied on the evidence presented by the former wife." See also, Hicks v. Hicks, 948 So.2d 63, (Fla. 5th DCA 2007), "a party who fails to provide full, complete financial disclosure will not be heard to complain about the trial court's inability to make a specific calculation." The bank records introduced by the Wife reveal that there is a flow of income the Husband uses to maintain his lifestyle.

4

The Court has considered the following in awarding temporary alimony:

a. The standard of living established during the marriage; the wife has been solely dependent upon the Husband and lives a modest life style.

b. The duration of the marriage; long term, twenty-one (21) years.

c. The age and the physical and emotional condition of each party; both parties appeared physically and mentally fit in court, and there is no evidence to contradict that.

d. The financial resources of each party, including the non-marital and the marital assets and liabilities distributed to each; the Wife has no college education, and did not work during the twenty-one (21) year marriage; the Husband has been the sole financial provider for the family, and the parties appear to have a financial interest in property located in Brookline New York.

e. Earning capacities, educational levels, vocational skills, and employability of the parties, and when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment; the Wife has no college schooling. The Husband is the sole financial provider for the family;

f. The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party; The Wife was a stay at home mother and raised their child, while the Husband provided their only income.

g. The responsibilities each party will have with regard to any minor children they have in common; their only child is nineteen (19) years old and emancipated.

h. The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a nontaxable, nondeductible payment;

i. All sources of income available to either party, including income available to either party through investments of any asset held by that party; the parties appear to have a financial interest in property located in Brooklyn, New York.

j. Any other factor necessary to do equity and justice between the parties.

5

The Court, after considering all of the above, temporarily awards the Wife exclusive use of the martial home and temporary alimony payments of two-thousand ($2,000.00) dollars a month, nunc pro tunc to July 2017, the day that this litigation commenced, and two (2) years of retroactive payments totaling forty-eight-thousand ($48,000.00) dollars. The retroactive alimony payments are to be made at an additional one thousand ($1,000.00) dollars a month. The total monthly payments are three-thousand ($3,000.00) dollars. Once the past due alimony of forty-eight-thousand ($48,000.00) dollars is paid in full, alimony payments are to resume at two-thousand ($2,000.00) dollars a month. This temporary alimony payment and temporary exclusive use of the marital home is based on the Wife showing a need which included the entire household expenses, including: mortgage payments, taxes, utilities, insurance, and normal day to day living expenses. The Wife has been heavily indebted to a third party, Michael Cohen, since filing her petition for dissolution of marriage in July 2017. He has no obligation to keep her financially afloat while she awaits pendent lite relief, Bromante v. Bromante, 577 So.2d 622 (Fla. 1st DCA 1991). This temporary award enables the Wife to maintain the life style that she had during this marriage. Melton v. Melton, 79 So.3d 154 (Fla. 2 DCA 2012); Martinez v. Martinez, 228 So.3d 164 (Fla. 2 DCA 2017).

The Husband's continued erratic payments of the household expenses, along with his threats to stop payments of the household expenses, further supports this Court's award of temporary exclusive use of the marital home to the Wife and awarding her temporary alimony. The Court's Order will provide equity and justice by making sure that the Wife may maintain her modest life style, while additionally providing that the marital home is properly maintained.

**Temporary Attorney Fees:**

The Wife has incurred attorney's fees largely due in part to the Husband's failure to respond to Court Orders. The vast majority of the Motions filed by the Wife have been granted, as they were necessitated by the inactions of the Husband thus generating higher legal costs.

Trying to ascertain the Husband's financial status has not been an easy task. The Court hopes to get a better understanding in future hearings of the Husband's finances. At this time, relying on the Husband's 2017 financials, the introduction of the Husband's bank records by the Wife, and the testimony provided, the Court finds that the Husband has the present ability to pay the Wife's attorney's fees. The Wife has a need for such contribution. See, Jooste v. Jooste 44

6

Fla. L. Weekly D1242 (Fla. 4th DCA May 8, 2019). It is not necessary that one spouse be completely unable to pay attorney's fees for the trial court to require the other spouse to pay those fees. See, <u>Canakaris v Canakaris</u>, 382 So.2d 1197 (Fla. S.Ct. 1980).

There exists a financial disparity between the Husband and Wife. The Husband has been the sole provider for all finances during their twenty-one (21) years of marriage. The Wife has never worked out of the home during this time period and has no formal college education.

As of March 5, 2019, the evidence provided to this Court is that the Wife has incurred legal fees. Exhibit number five (5) in evidence is a listing of the legal fees charged and Exhibit number seven (7) is a complete breakdown of the billing statement for legal fees. The Wife is seeking an award of $72,811.00 in legal fees.

The Court, at this time finds an entitlement to legal fees, and awards a temporary/partial payment of legal fees of $10,000.00. Attached to this Order is a scheduling Order on petitioner's request for award of additional attorney fees, which the parties are to follow.

This Court retains and reserves jurisdiction of this case for the purpose of enforcing and modifying the terms of this Order and entering further Orders as may be necessary.


**ORDERED:**

The Wife's Motion for Temporary Alimony is **GRANTED**. The Court awards the Wife $2,000.00 a month, nun pro tunc to July 2017, totaling two (2) years of back payment amounting to $48,000.00. The Husband is to pay $2,000.00 a month, with an additional payment of $1,000.00 a month to make up for back payments owed. These payments total $3,000.00 a month in payments from Husband to Wife. These payments shall be made monthly until paid up on the $48,000.00 owed, then payments of $2,000.00 per month will continue.

The Wife's Motion for Temporary Exclusive use of the marital home is **GRANTED**. The Husband will have thirty (30) days from the date of this Order to vacate the marital home.

The Wife's Motion for Temporary Attorney's Fees, the Court finds **ENTITLEMENT**, and awards a temporary/partial payment at this time of $10,000.00 in legal fees to be paid for by the Husband.   Attached is the Scheduling Order on Petitioner's request for additional attorney's fees that the parties are to follow.

7

**ORDERED** in chambers in Broward County, Ft. Lauderdale, Florida on the _____ day of _____, 2019.

PETER HOLDEN

JUL 3 0 2019

_____

Peter Holden, Circuit Court Judge TRUE COPY

cc:    All parties of record

8

Broward County Commission
Deed Doc Stamps: $0.70

# EXHIBIT "B"

**Prepared by and return to:**
Barry S. Franklin, Esquire
Barry S. Franklin & Associates, P.A.
3590 Mystic Pointe Drive
Aventura, Florida 33180

## QUITCLAIM DEED

THIS QUITCLAIM DEED executed this 28th day of _March_, 2019, by first party, MENACHEM SCHNEORSON, a married man (hereinafter referred to as the "Grantor"), whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009, to second parties, MARGALIT SCHNEORSON, a married woman, and MENACHEM SCHEORSON, a married man (hereinafter collectively called the "Grantees"), whose post office address is: 1125 NE 6th Street, Hallandale Beach, Florida 33009.

(The designation "Grantor" and "Grantee(s)" as used herein shall include said parties, their heirs, successors and assigns and shall include singular, plural, masculine, feminine or neuter as required by context.)

Witnesseth, that the said first party/Grantor, for the sum of Ten Dollars and No/100 ($10.00), and other good and valuable consideration paid by the second parties, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second parties/Grantees, their heirs, successors, and assigns, all right, title, interest and claim which the said first party/Grantor has in and to the following described parcel of land, and improvements, and appurtenances thereto in Broward County, Florida, to wit:

Legal description: LOT ELEVEN (11) IN BLOCK TEN (10), of GULFSTREAM ESTATES NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 39, PAGE 49, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA
Abbreviated legal description: GULFSTREAM ESTATES NO 2 39-49 B LOT 11 BLK 10 (hereafter referred to as the "Property").

The street address for the Property is:
1125 NE 6th Street, Hallandale Beach, Florida 33009.

*Page 1 of 2*



The Property Appraiser's Parcel Identification Number for
the Property is: 5142 22 37 0410
Folio Number: 708215

IN WITNESS WHEREOF, Grantor has signed and sealed these presents the
day and year first above written, sealed and delivered in the presence of:

WITNESSES:

Print Name: ___Drover Ronran___

Address of Witness:
WELLS FARGO BANK, N.A.
Hallandale Branch
1201 East Hallandale Beach Blvd
Hallandale Beach, FL 33009

Print Name: ___Kathy Sostre___
Address of Witness:
___1201 E. Hallandale Bch Blvd___
___Hallandale Bch FL 33009___

GRANTOR:

___M. SCHNEORSON___
MENACHEM SCHNEORSON, a
married man, individually

STATE OF FLORIDA      )
                      )ss.:
COUNTY OF ___Broward___   )

The foregoing instrument was acknowledged before me this ___28th___ day of
___March___, 201__9__, by MENACHEM SCHNEORSON, a married man, individually,
who     is     personally     known     to     me,     or     who     has     produced
___FL Drivers license___ as identification.

___Neill Riley___
Notary Public – State of Florida
Printed Name: ___Neill Riley___

My Commission Expires: ___August 06, 2022___

NEILL RILEY
NOTARY
My Comm. Expires
August 06, 2022
No. GG 245571
PUBLIC
STATE OF FLORIDA

*Page 2 of 2*

## EXHIBIT "A"

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

IN RE: THE MARRIAGE OF          CASE NO.: FMCE-17-011569

MARGALIT SCHNEORSON,          FAMILY DIVISION
     Petitioner/Counter-Respondent/Wife,

and

MENACHEM SCHNEORSON,
     Respondent/Counter-Petitioner/Husband,

and

BARRY A. KAYE
     Third Party Defendant.

_____/

**<u>ORDER GRANTING PETITIONER/WIFE'S MOTION TO COMPEL THE
RESPONDENT/HUSBAND TO EXECUTE AN APPROPRIATE DEED
CONVEYING AN UNDIVIDED ONE-HALF (1/2) INTEREST TO THE
WIFE IN THE MARITAL HOME SO THAT SHE IS A JOINT OWNER OF
THE PROPERTY AS A MATTER OF PUBLIC RECORD AND FOR
OTHER RELIEF INCIDENT THERETO</u>**

THIS CAUSE came before the Court on the Wife's Motion entitled:

Petitioner/Wife's Motion To Compel The Respondent/Husband To Execute An

Appropriate Deed Conveying An Undivided One-Half (1/2) Interest To The Wife In

The Marital Home So That She Is A Joint Owner Of The Property As A Matter Of

Public Record And For Other Relief Incident Thereto for a special set hearing on

Tuesday, March 19, 2019. In attendance for the hearing were the Petitioner/Wife,

MARGALIT SCHNEORSON (hereinafter referred to as the "Wife"), and her

*Schneorson v. Schneorson*
*Order Granting Wife's Motion to Compel Husband to Execute Appropriate Deed, et al.*
*Case No.: FMCE-17 011569*
*Page 2 of 5*

counsel of record Barry S. Franklin of the Law Firm of Barry S. Franklin &
Associates, P.A., together with the Respondent/Husband, MENACHEM
SCHNEORSON (hereinafter referred to as the "Husband"), and his counsel of
record Steven S. Saber. After hearing from both counsel of record and considering
both the deposition testimony of the Husband and his in-Court testimony at the
March 19, 2019 hearing, including his answers to questions asked by the Court, and
the Court being otherwise fully advised in the premises, it is thereupon

ADJUDGED:

1.      This Court has both subject matter and personal jurisdiction over the
parties.

2.      The residential property located at 1125 NE 6th Street, Hallandale Beach,
Florida 33009 is agreed by both parties to be the marital home.

3.      The marital home located at 1125 NE 6th Street, Hallandale Beach,
Florida 33009 is also the constitutionally protected homestead property for both the
Husband and the Wife.

4.      The Husband testified in his deposition taken on December 11, 2018
(pertinent pages of which were admitted into evidence during the first part of the
temporary relief hearing held on January 8, 2019) that:

        Q; So, as we sit here today, is your wife's name on the title to the
        Hallandale Beach property?

*Schneorson v. Schneorson*
*Order Granting Wife's Motion to Compel Husband to Execute Appropriate Deed, et al.*
*Case No.: FMCE-17-011569*
*Page 3 of 5*

A: It's not, only because she didn't want to come to put her name on the title. Very simple.

Q: Okay, so it's so simple that your next answer to my question is, Mr. Franklin, she absolutely should have her name on the title to the property. She deserves to be an equal co-owner just like me –

A: Absolutely.

5.    During the second part of the hearing held on March 19, 2019, the Husband testified that the Wife's name should have been placed on the title to the property from the beginning after it was purchased. The Court will address at trial the testimony from both parties as to credibility or lack thereof as to why the Wife's name was omitted from the Deed showing record title to the subject property when the property was purchased.

6.    The public record indicates that the subject marital home was purchased on January 31, 2013 with a first mortgage in favor of Primary Residential Mortgage, Inc. The Court has had an opportunity to review a true copy of the first mortgage (mortgagee Primary Residential Mortgage, Inc.) and the mortgage instrument clearly reflects that the Wife executed the mortgage. The Husband's counsel incorrectly argued in open Court at the March 19, 2019 hearing that the Wife had not signed the first mortgage in favor of Primary Residential Mortgage, Inc. and that will be addressed at a later hearing.

*Schneorson v. Schneorson*
*Order Granting Wife's Motion to Compel Husband to Execute Appropriate Deed, et al.*
*Case No.: FMCE-17-011569*
*Page 4 of 5*

7.    Additionally, at the March 19, 2019 hearing, the Husband further testified that he was willing to cooperate to make sure that the Wife's name is listed as a 50% co-owner of the subject property which has always been her homestead.

8.    Regardless of whether the property was titled only in the Husband's name or now will be titled in joint names of both the Husband and Wife, the residential property (marital home) located at 1125 NE 6th Street, Hallandale Beach, Florida 33009 has, at all times, been a marital asset subject to equitable distribution in this divorce case.

9.    The Wife's Motion entitled: Petitioner/Wife's Motion To Compel The Respondent/Husband To Execute An Appropriate Deed Conveying An Undivided One-Half (1/2) Interest To The Wife In The Marital Home So That She Is A Joint Owner Of The Property As A Matter Of Public Record And For Other Relief Incident Thereto is well founded and should be granted. It was also demonstrated to the Court that the Wife, through her counsel of record, made several attempts to get the Husband to sign an appropriate Quitclaim Deed but all of those attempts even after the filing of the Motion to Compel were ignored by the Husband. For that reason, the Court reserves jurisdiction on the Wife's request for attorneys' fees and costs to be taxed against the Husband for all fees and costs reasonably related to the

time spent securing the Husband's execution of a Quitclaim Deed in favor of the Wife for the marital home.

10.    Within ten (10) days from the entry of this Order, the Husband shall sign the Quitclaim Deed prepared by Wife's counsel and return the original duly executed Quitclaim Deed to the Wife's counsel's office to wit: The Law Firm of Barry S. Franklin & Associates, P.A., 3590 Mystic Pointe Drive, Aventura, Florida 33180, Bfranklin@barrysfranklin.com.

11.    The Court reserves jurisdiction for enforcement purposes and is otherwise authorized by Florida law.

DONE AND ORDERED in Chambers, Broward County, Florida, this 8 day of ~~March~~, 2019.
May

_____
CIRCUIT COURT JUDGE

PETER HOLDEN
MAY 03 2019
A TRUE COPY

Copies to:
1.  Barry S. Franklin, Esq., 3590 Mystic Pointe Drive, Aventura, Florida 33180; Email: BFranklin@barrysfranklin.com
2.  Steven S. Saber, Esq., 4238 Hollywood Blvd., #203, Hollywood, FL 33021 Email: Saberlaw@att.net

After Recording Return To:
PRIMARY RESIDENTIAL MORTGAGE, INC.
4750 WEST WILEY POST WAY STE. 200
SALT LAKE CITY, UT 84116
800-255-2792

This Document Prepared By:
ROSE CASTRO
PRIMARY RESIDENTIAL MORTGAGE, INC.
4750 WEST WILEY POST WAY
SALT LAKE CITY, UTAH 84116
800-255-2792

[Space Above This Line For Recording Data]

# MORTGAGE

SCHNERORSON
Loan # 4115000099
MIN: 100146410002111213
MERS Phone: 1-888-679-6377
PIN: 514222370410

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 31, 2013, together with all Riders to this document.

(B) "Borrower" is MENACHEM SCHNERORSON, A MARRIED MAN JOINED BY HIS WIFE, MARSALIT SCHNERORSON. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is PRIMARY RESIDENTIAL MORTGAGE, INC. Lender is a NEVADA CORPORATION organized and existing under the laws of NEVADA. Lender's address is 4750 WEST WILEY POST WAY, SALT LAKE CITY, UT 84116.

(E) "Note" means the promissory note signed by Borrower and dated JANUARY 31, 2013. The Note states that Borrower owes Lender ONE HUNDRED SEVENTY-SIX THOUSAND AND 00/100 Dollars (U.S. $176,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2043.



FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 13      Form 3010 1/01
3170

CFN # 111293956, OR BK 49468 Page 1403, Page 1 of 13, Recorded 02/01/2013 at 08:37 AM, Broward County Commission, Doc M: $616.00 Int. Tax $352.00 Deputy Clerk ERECORD

Case 1-22-40494-jmm   Doc 10-1   Filed 03/18/22   Entered 03/18/22 16:32:39

CFN # 111293956, OR BK  49468  PG  1404,  Page  2 of 13

411500099

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY of BROWARD
LOT ELEVEN (11) IN BLOCK TEN (10), OF GULFSTREAM ESTATES NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 39, PAGE 49, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
📖 317 10        Page 2 of 13        Form 3010 1/01

*M.C*
*M.S.*

CFN # 111293956, OR BK  49468  PG  1405,  Page  3 of 13

411500099

which currently has the address of 1125  NE  6TH  ST, HALLANDALE  BEACH, Florida 33009 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient

CFN # 111293956, OR BK 49468 PG 1406, Page 4 of 13

411500099

amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
317 10                           Page 4 of 13                          Form 3010 1/01

*M.S*

*M.S*

CFN # 111293956, OR BK  49468  PG  1407,  Page  5 of 13

411500099

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration

FLORIDA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬨ 317 10                                      Page  5 of 13                                      Form 3010 1/01

*m.s*
*m.s*

CFN # 111293956, OR BK  49468  PG  1408,  Page  6 of 13

411500099

or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has

CFN # 111293956, OR BK 49468 PG 1409, Page 7 of 13

411500099

abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01

M.S
M.S

CFN # 111293956, OR BK 49468 PG 1410, Page 8 of 13

411500099

takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
317 10                                    Page 8 of 13                              Form 3010 1/01

M.S
M.S

411500099

judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change

M.S
M.S

CFN # 111293956, OR BK 49468 PG 1412, Page 10 of 13

411500099

of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

M.S

M.S

CFN # 111293956, OR BK 49468 PG 1413, Page 11 of 13

411500099

might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to

*M.S*

*M.S*

CFN # 111293956, OR BK  49468   PG  1414,   Page  12 of 13

411500099

Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_M. Schneorso1_ _1-31-13_
- BORROWER - MENACHEM SCHNEORSON - DATE -

_Margalit Schneorson_ _1-31-13_
MARGALIT SCHNEORSON    - DATE -

Borrower's Mailing Address: 1125 NE 6TH ST, HALLANDALE BEACH, FL 33009

Signed, sealed and delivered in the presence of:

Witness
_Emanuel Goldsmidt_

Witness _Jessica Cestony_

CFN # 111293956, OR BK  49468  PG  1415,  Page  13 of 13

411500099

[Space Below This Line For Acknowledgment]

STATE OF FLORIDA

COUNTY OF BROWARD

    The foregoing instrument was acknowledged before me on JANUARY 31, 2013 , by MENACHEM SCHNEORSON MARGALIT SCHNEORSON, who is personally known to me or who has produced FL DRIVERS LICENSES _____ as identification.

_____
Notary Public

My Commission Expires:

E. GOLDSZMIDT
Notary Public - State of Florida
My Comm. Expires Apr 4, 2014
Commission # DD 974370

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
☜ 317 10                              Page 13 of 13                              Form 3010 1/01

**Hearing Date: April 12, 2022 at 10:00 AM**
**Response/Objections: April 5, 2022**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------x
In Re:

MENACHEM MENDEL SCHNEORSON          Case No. 22-40494 - JMM

        Debtor.          Chapter 7

------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the *Creditor, Margalit Schneorson's Motion for*
*Relief From Automatic Stay, Awarding Prospective Stay Relief and Waiving the 14 Day Stay*
*Under Bankruptcy Rule 4001(a)(3)* filed by Creditor, Margalit Schneorson, a hearing will be
held on **April 12, 2022 at 10:00 am** before the Hon. Jil Mazer-Marino, Bankruptcy Judge at U.S.
Bankruptcy Court; 271-C Cadman Plaza East, Brooklyn, New York 11201-1800 , Courtroom #
3529 to consider the Motion for an Order granting relief as follows: (i) granting the Motion; (ii)
declaring that the Marital Property is not property of the estate and not subject to the automatic
stay; (iii) declaring that the automatic stay does not apply to the acts in the Divorce Case set
forth above; (iv) granting relief from the automatic stay, to the extent applicable, to allow the
Divorce Court to enter all orders to enforce and finally determine all issues in the Divorce Case
and/or sell the Marital Property; (v) granting prospective stay relief to the Wife with respect to
the Divorce Case and/or the Marital Property; (vi) waiving the 14-day stay under Bankruptcy
Rule 4001(a)(3); and (vii) granting any additional relief the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE,** that said hearing will be conducted
telephonically. All parties, including attorneys, clients and pro se parties, that wish to participate

in the Hearing shall appear telephonically. Each Party that intends to participate in a telephonic hearing must email the Courtroom Deputy at **JMM_hearings@nyeb.uscourts.gov** at least one business day before the scheduled hearing and provide the party's name, email address, and telephone number. To participate in the Hearing, Participating parties, including attorneys, shall follow the following instructions:

1. Dial in Number 888-273-3658

2. Access Code – 2872314

3. State your name each time before speaking

4. Avoid the use of a speaker phone and use a landline, if possible

5. If you are not speaking, keep your phone on mute

6. Speak up and enunciate so that you can be heard and understood

**PLEASE TAKE FURTHER NOTICE** that response or objections, if any, to the Motion must (i) be in writing, (ii) conform to the Bankruptcy Rules, Local Bankruptcy Rules and General Orders, (iii) specify the name of the objecting party, and state with specificity the basis of the objections(s) and the specific grounds therefore, and (iv) be filed with the Court electronically accordance with General Order 559 (General Order 559 and the User's Manual for the Electronic Filing Case System can be found at http://www.nyeb.uscourts.gov, the official website for the Court),by registered users of the Court's case filing system, and by all other parties in interest, on a diskette, CD or DVD in Portable Document Format (PDF), Word Perfect or any other Windows-based word processing format and (v) simultaneously served upon Alan R. Crane, Esq., counsel for the Defendant, at 2255 Glades Road, Suite 419A, Boca Raton, Florida 33431 and at **acrane@furrcohen.com** so as to be received no later than seven (7) days prior to the hearing date as set above.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and received by the Court, the Court may grant the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that the hearing may be adjourned from time to time without further notice other than the announcement of such adjournment in open court or by posting of such adjourned date on the Court's calendar on the aforementioned date.

Dated: March 18, 2022

FURR AND COHEN, P.A.
One Boca Place, Suite 419A
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY:___/s/ *Alan R. Crane*
      Alan R. Crane, Esq.
      Florida Bar No.: 0963836
      Pro Hac Vice Pending
      E-mail: acrane@furrcohen.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------x

In Re:

MENACHEM MENDEL SCHNEORSON          Case No. 22-40494-JMM

           Debtor.                          Chapter 7

-----------------------------------------------------x

## CREDITOR, MARGALIT SCHNEORSON'S MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY; AWARDING PROSPECTIVE STAY
## RELIEF AND WAIVING THE 14-DAY STAY UNDER BANKRUPTCY RULE 4001(a)(3)

        MARGALIT SCHNEORSON ("Wife"), by and through her undersigned counsel, pursuant

to 11 U.S.C. § 362(b)(2) and (d)(1), 28 U.S.C. § 2201, Rule 4001 of the Federal Rules of

Bankruptcy Procedure and Local Rule 4001-1, requests this Court enter an order lifting the

automatic stay and/or determining that the automatic stay is inapplicable, to allow the Wife to sell

the Marital Property which the Debtor has been completely divested of any legal or equitable

interests by multiple prepetition court orders entered in the Divorce Case and states as follows:

        1.      Three successive chapter 7 bankruptcy cases have been filed in bad faith since

December 29, 2021, all of which are before this Court to frustrate the Divorce Case and the Wife's

rights in the Marital Property, along with an adversary proceeding to remove the Divorce Case,

where as detailed herein the Debtor had numerous adverse orders entered against him:

        a.  **First Bankruptcy Case** - *In re Menachem Mendel Schneorson*, Case No. 1:21-43159-JMM (filed Dec. 29, 2021) and dismissed **March 4, 2022**.

            i.  **Removal Adversary** - *Margalit Schneorson v. Menachem Schneorson*, 1:22-01003-JMM (filed **Jan. 4, 2022**)

        b.  **Second Bankruptcy Case** – *In re Menachem Mendel Schneorson*, Case No. 1:22-40433-JMM (filed **March 6, 2022**) an Involuntary Petition, which appears to have been prepared by the Debtor and submitted by Creditors, two of whom

1

are not listed as creditors in either of the Debtor's voluntary bankruptcy cases (discussed in detail below)

    c. **Third Bankruptcy Case** – *In re Menachem Mendel Schneorson*, Case No. 1:22-40494-JMM (filed **March 14, 2022**)

2.    In this Motion the Wife seeks entry of an order: granting relief from the automatic stay and/or determining that the automatic stay is inapplicable to: (i) allow the 17th Judicial Circuit Court in and for Broward County, Florida (the "**Divorce Court**") to enter all orders the Divorce Court deems necessary or appropriate with respect to the dissolution of marriage proceeding styled *Schneorson v. Schneorson*, FMCE17011569 (the "**Divorce Case**"), through and including Final Judgment of Dissolution of Marriage and any enforcement orders the Divorce Court determines are necessary or appropriate thereafter; (ii) to allow the Wife to sell the real property located at 1125 NE 6th Street, Hallandale Beach, FL 33009 (the "**Marital Property**"), which as detailed herein the Debtor had been completely divested of any legal or equitable interest in since December 19, 2019.

3.    The State Court in the Divorce Case has issued various orders awarding the Wife temporary alimony, child support, attorney's fees, and partial equitable distribution.

4.    As is abundantly clear from the successive bankruptcy filings and the record in the Divorce Case, "cause" is sufficiently established to grant stay relief under 11 U.S.C. § 362(d)(1), where it is applicable, and entry of an order granting declaratory relief under 11 U.S.C. § 362(b)(2)(A), (B) and (C) and 28 U.S.C. § 2201 determining the automatic stay is inapplicable to the enforcement of the State Court's orders, to allow the Wife to sell the former Marital Property for which record title was transferred to the Wife in December 2019 and was awarded to the Wife as partial equitable distribution, and to enter a final judgment of dissolution of marriage dividing any remaining marital assets and liabilities and making provisions for the award of domestic support obligations, including alimony, child support and attorneys' fees and costs.

**I.    The Debtor's Multiple and Continued Violation of the Divorce Court's Orders and the State Court's Award of the Marital Residence to the Wife in 2019**

5.    The Divorce Case was filed on September 5, 2017 by the Wife.

6.    On May 8, 2019, the State Court entered its *Order granting Petitioner/Wife's Motion to Compel the Respondent/Husband to Execute an Appropriate Deed Conveying an Undivided One-Half (1/2) Interest to the Wife in the Marital Home So That She is a Joint Owner of the Property as Matter of Public Record and For Other Relief Incident Thereto* ("**Order Compelling ½ Interest in Marital Property**").    A copy of the Order Compelling ½ Interest in Marital Property is attached as **Exhibit A**. The State Court ordered that the Debtor execute a deed transferring ½ of the interest in the Martial Property to the Wife.  The Court reserved jurisdiction to determine whether the Debtor should be sanctioned for his failure to voluntarily sign an appropriate deed even after a Motion to Compel was filed but ignored by the Debtor.   A copy of the Quitclaim Deed recorded on April 25, 2019, transferring the interest in the Marital Property from the Debtor to the Debtor and the Wife is attached as **Exhibit B**.

7.    On July 30, 2019, the State Court entered its *Order for Temporary Alimony Support, Temporary Exclusive Use of the Marital Home, Temporary Attorney Fees* ("**Temporary Relief Order**").  A copy of the Temporary Relief Order is attached as **Exhibit C**.   In part, the State Court found that the Debtor had made a threat to not pay any future household related expenses.  Ex. B, p. 2. The marital home was in "dire need of repair.  The roof is leaking, mold and mildew has started to appear, the water to the home has been shut off for a period of time, the home's insurance has not been documented, taxes on the home are not current, and the mortgage payments have been erratic." *Id*.  The State Court awarded the Wife temporary exclusive use of the Marital Home. Further, the State Court ordered the Debtor to pay $2,000.00 per month in

temporary alimony retroactive to July 2017 ($48,000.00). The Debtor is to pay the Wife $2,000.00 per month in ongoing alimony and $1,000.00 per month towards the past due alimony.

8.      Further, in the Temporary Relief Order, the State Court found that "[t]he [Debtor] has not produced requested documents, filed a financial affidavit for 2018, or updated a financial affidavit despite repeated Court Orders to do so. He has been less than forthcoming with providing documentation that proves his worth, yet every month the [Debtor] finds the money to satisfy his financial obligations." *Id.* at p.3. The State Court had heard testimony and reviewed the Debtor's 2017 financial affidavit which indicated that Debtor had a total net worth of $1,713,000.00. Further, the State Court received testimony about a property/building in Brooklyn, New York which was not titled in either of the spouse's name but is part of the marital estate. The State Court heard testimony that the building, in 2019, was worth over $1,000,000.00.

9.      On November 19, 2019, the State Court entered its *Order Granting Wife's Motion to Compel Husband to Execute and Deliver a Deed to the Wife Transferring All of His Remaining Right/Title and Interest in the Marial Residence to the Wife and For Other Relief Incident Thereto* (**"Order Compelling Transfer of Deed"**). A copy of the Order Compelling Transfer of Deed is attached as **Exhibit D**. The State Court found that although the Debtor previously testified that the Debtor paid the first mortgage, insurance, and property taxes current or that the Debtor would catch up those obligations, the Debtor had failed to do so which ultimately resulted in the mortgage company issuing a Notice of Default and Notice of Intent to Foreclose. Further, the State Court found that the Debtor has failed to comply with the Temporary Relief Order, including the Debtor's failure to pay the Wife alimony, pay $10,000.00 in temporary attorney's fees, failed to comply with a July 30, 2019, scheduling order and failed to comply with the July 19, 2019 Injunctive Relief Order. Further, the Debtor failed to convey the ½ interest in the Marital Property as required

4

by the Order Compelling ½ Interest in Marital Property and failed to vacate the Marital Property as was ordered.  As a result, the State Court ordered the Debtor to execute a deed transferring the remaining rights, title, and interest in the Marital Property to the Wife and found that the Wife was entitled to an award of attorney's fees and costs with the State Court reserving jurisdiction on the amount.  A copy of the Quitclaim Deed recorded on December 19, 2019, transferring the interest in the Marital Property from the Debtor and the Wife to the Wife only, is attached as **Exhibit E**.

10.     On January 6, 2020, the State Court entered its Order Granting Wife's Motion to Compel Compliance with Scheduling Order Dated July 20, 2019, and For Sanctions Against the Husband and Money Final Judgment in Favor of the Wife and against the Husband. ("**Sanctions Order**").  The Sanctions Order is attached as **Exhibit F**.  The State Court awarded the Wife $111,199.60 in attorneys' fees and costs.  In determining the reasonableness of the attorney's fees, the State Court found that fees were "necessitated by the Husband's recalcitrant and defiant behavior making the discovery process more time consuming and expensive and, even worse, not complying with various Court Orders including the Temporary Relief Order and this particular Scheduling order at issue."

11.     On December 21, 2021, the State Court entered its *Order Denying Husband's Verified Emergency Motion to Compel Wife to Maintain Status Quo Pursuant to Administrative Order No. 2019-15-UFC and Granting Wife's Verified Motion for Partial Early Equitable Distribution as to the Parties' Former Marital Home and for Other Relief Incident Thereto and Deferring Ruling on the Wife's Motion for Contempt (Including All Supplements Thereto) Against the Husband for Non-Payment of Support* ("**Partial Equitable Distribution Order**").  A copy of the Partial Equitable Distribution Order is attached as **Exhibit G**.  The Debtor was ordered to transfer the remaining portion of his interest in the Marital Property, in part, as sanctions for the

Debtor's continued failure to comply with the Debtor's obligations under the Temporary Relief Order, the Sanctions Order and orders entered on May 8, 2019 and January 9, 2020 requiring the Debtor to pay or reimburse the Wife unpaid mortgage payments and real estate taxes advanced by a third party to avoid the Marital Property from going into foreclosure.

**II.    The Debtor's Failure to Disclose Potential Assets in the Bankruptcy Cases; False Oaths as to Creditors in the Bankruptcy Proceedings Supports Stay Relief**

12.    In the Divorce Case, Barry Kaye was named a party because of a "bogus" second mortgage he had placed against the Marital Property and because Barry Kaye and his company, Crown Travel International, were involved in sale of the real property located 1257 Ocean Parkway, Brooklyn, New York 11230 ("New York Property") to which the Wife claimed was a marital asset.

13.    On February 5, 2020, the Divorce Court entered its *Temporary Injunctive Relief Order Freezing Any and All Funds Held by Third Party Defendant Barry Kaye and/or Crown Travel International (Hereinafter "Crown Travel") Or any Person or Entity Connected to the Husband, Barry Kaye or Crown Travel relating to All or Any Portion of the Sales Proceeds from the Sale of 1257 Ocean Parkway, Brooklyn, New York 11230 entered on* (**Injunctive Relief Order**). Attached as **Exhibit H**.

14.    In ruling that the sales proceeds from the New York Property should be subject to injunctive relief and held either in the Court Registry or by the Wife's Divorce Counsel, the State Court made certain findings in the Injunctive Relief Order.

15.    The State Court stated that Barry Kaye was "very much involved in the parties' finances and has engaged in financial dealings with the [Debtor] frequently during the parties' marriage and during these divorce proceedings. *Id*. The Divorce Court took judicial notice of it is

6

own prior order finding that Barry Kaye placed a "bogus" second mortgage on the Marital Residence which was removed by the Divorce Court. *Id*.

16.     The Debtor "has been recalcitrant, dilatory and evasive with discovery and non-compliant with important court orders." *Id*. This resulted in attorneys' fees and costs being awarded against the Debtor. *Id*. Further, the Debtor failed to comply with two prior Divorce Court Orders requiring that the net sales proceeds be deposited into either the Court Registry or the Wife's Counsel's trust account. Those orders were entered on July 19, 2019, and July 30, 2019. *Id*.

17.     Further, the Divorce Court stated that Debtor had acknowledged that the sales proceeds of the New York Property were marital assets. Id. This statement was upon the Debtor's deposition taken on December 11, 2018, which was admitted into evidence, and the Debtor's verbal testimony in a hearing before the Divorce Court. *Id*. The New York Property was not held in the name of the Debtor, the Wife, or their joint names. *Id*.

18.     Further, during the Debtor's in-court testimony on July 9, 2020, the Debtor acknowledged constructive receipt of the $150,000.00 proceeds from the New York Property. *Id*.

19.     Based upon information and belief, there are funds associated with the sale of the New York Property that are being held in escrow as required by the Injunctive Relief Order.

20.     In his schedules and Statement of Financial Affairs, the Debtor fails to disclose the Wife or the Wife's Divorce Attorney as creditors. The Debtor fails to disclose the dispute regarding the proceeds of the New York Property.

III.     **Despite Having Already Been Divested of his Interest in the Marital Property the Debtor filed his First Voluntary Chapter 7 Bankruptcy and Tried to Remove the Divorce Case to Cause Further Delay in the Divorce Proceeding and Avoid Complying with the Divorce Court's Orders**

      a.  **The First Voluntary Case**

21.     On December 29, 2021, the Debtor filed his Voluntary Petition for Chapter 7 Relief before this Court in Case No. 1-21-43159-jmm. ("**First Voluntary Case**"). [First Voluntary Case ECF #1]. The only significant asset the Debtor lists is the Marital Property.

22.     On December 29, 2021, the Clerk issued a Notice of Deficient Filing - Chapter 7 Individual. [First Voluntary Case ECF # 2].  The Debtor failed to file a Certificate of Credit Counseling and various schedules and various local and official forms.   As of the date of this filing, the Debtor has failed to rectify the deficiencies.

23.     On December 29, 2021, a document submitted to the Court by the Debtor that simply has the name "Barry Kaye" and his address handwritten on it, was docketed as a "List of Creditors [First Voluntary Case ECF # 3].  The Debtor fails to list the Wife or her counsel.

24.     On February 16, 2022, the Debtor filed his initial schedules and statement of financial affairs [First Voluntary Case ECF # 21].  In the Debtor's Schedule E/F the Debtor schedules "Barry Kay" (sic) as a creditor.  The Debtor did not schedule the Wife or her counsel as creditors despite the numerous court orders in the Divorce Case already entered and the contested Divorce Case continuing, nor did the Debtor schedule Aaron Berlin or Mark Elnatan as creditors, which is important because they are two of the petitioning creditors in the involuntary bankruptcy.

25.     The Debtor filed an amended Schedule E/F on February 16, 2022 [First Voluntary Case ECF No. 29] again only scheduling "Barry Kay" (sic) as a creditor and not scheduling the Wife, Aaron Berlin or Mark Elnatan.

8

26.     The Wife filed a Motion for Relief from the Automatic Stay [First Voluntary Case ECF # 31] on February 18, 2022, however, the First Voluntary Case was dismissed prior to the expiration of the objection period or a hearing could be held on the Motion.

27.     On March 4, 2022, this Court entered an Order Directing Clerk's Office to Dismiss this Case Pursuant to 11 U.S.C. 521(i)(1). [First Voluntary Case ECF # 41].

### b.     The Adversary Proceeding to Remove the Divorce Case in the First Voluntary Case

28.     On January 4, 2022, the Debtor filed his unsigned Notice of Removal initiating the adversary proceeding styled *Margalit Schneorson v. Menachem Schneorson*, 1:22-01003-JMM [Adv. ECF #1].  The Debtor provides no specific grounds for removal, only stating, "[t]he removed cases may be core, and some claims may be non-core."

29.     On February 2, 2022, the Wife filed her Motion for Remand [Adv. ECF #6].

30.     On March 8, 2022, the pending pretrial conference and motion hearings were "Marked Off without hearing" because the main case had been dismissed, however, the Adversary Proceeding has not been dismissed or closed as of the date of the filing of this Motion.

### IV.     An Involuntary Petition, Which Appears to Have Been Prepared by the Debtor, was filed Against the Debtor by Three Creditors, Two of Whom Have Never Been Listed as Creditors by the Debtor in his Voluntary Bankruptcy Cases

31.     On March 6, 2022, two-days after the First Voluntary Case was dismissed by this Court, an Involuntary Petition was filed against the Debtor initiating the instant case [ECF #1]. The three petitioning creditors, purportedly are, Barry Kay, Aaron Berlin, and Mark Elnatan. Interestingly, Aaron Berlin and Mark Elnatan are not scheduled creditors in the First Voluntary Case.  At this time, the Debtor has not filed a response to the Involuntary Summons.

32.     Close scrutiny of the Involuntary Petition raises suspicion as to who actually orchestrated and prepare the petition, especially where "Barry Kaye's" name was misspelled when

typed and the "e" was later handwritten in. The misspelling coincides with the Debtor's misspelling of Barry Kaye's name in the Schedules filed in the First Voluntary Case at ECF Nos. 21 and 29, and in the Second Voluntary Case at ECF No. 1, p. 27 (Schedule E/F 2.1).

**V.    The Second Voluntary Chapter 7 Petition was filed by the Debtor just Eight Days After the Involuntary Petition was Filed**

33.    On March 14, 20202, a second Voluntary Chapter 7 Petition was filed by the Debtor, styled *In re Menachem Mendel Schneorson*, Case No. 1:22-40494-JMM ("**Second Voluntary Case**"). [Second Voluntary Petition ECF #1]. Again, it is interesting to note that Aaron Berlin and Mark Elnatan are not listed in the schedules filed by the Debtor in Second Voluntary Case. *Id.* On March 14, 2022, the Clerk issued a Notice of Deficient Filing Chapter 7. [Second Voluntary Case ECF #6]. Further, the Debtor failed to file a filing fee and filed an application to waive the fee. [Second Voluntary Case ECF #2].

## MEMORANDUM OF LAW

34.    The Wife requests that this Court determine that the automatic stay does not apply and/or that the automatic stay should be lifted to allow the Divorce Case to proceed and to allow the State Court to enforce its orders, to allow the Wife to sell the former Marital Home and to allow the State Court to enter a final judgment of dissolution of marriage.

**A.    The Automatic Stay does not Apply to the Dissolution Proceeding or the Entry of Further Orders Regarding the Marital Property Because the Marital Property is Not Property of the Estate**

35.    11 U.S.C. §362(b)(2)(A)(iv) states that the stay does not apply "for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate." Prior to the filing of this bankruptcy, the State Court entered **Order Compelling ½ Interest in Marital Property, Order Compelling Transfer of Deed, and Partial Equitable Distribution Order**. Pursuant to the first two orders and the Quitclaim deeds recorded

10

on April 25, 2019 [Ex. B] and December 19, 2019 [Ex. E] title to the Marital Property was transferred to the Wife in 2019. As of the petition dates in any three of the consecutive bankruptcy cases, including this involuntary case, the Debtor had no legal or equitable interest in the Marital Property and was only left with a marital interest in the Marital Property.

36.     In 2021, the State Court awarded the Debtor's marital interest in the Marital Property to the Wife, in part, because of the Debtor's failure to pay various domestic support obligations, including alimony, attorneys' fees and his requirement to maintain payments on the Marital Property.

37.     Therefore, by the time that this Bankruptcy was filed, the Debtor had no legal or equitable interest in the Marital Property and the Marital Property did not become property of this bankruptcy estate. The only potential interest that the Debtor retained, as of the Petition Date, was his marital interest in the property which is not property of the bankruptcy estate. *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir. 2006) (Neither spouse obtains an equitable interest in property held by the other merely because the property falls within the definition of "marital property").

38.     The Wife therefore requests an Order pursuant to 11 U.S.C. § 541(a) and 28 U.S.C. § 2201, that the Marital Property is not property of the bankruptcy estate, not subject to the Automatic Stay of § 362(a), and the Wife and Divorce Court may take any action necessary or appropriate to sell, transfer, or otherwise use or dispose of the Marital Property.

39.     Further, 11 U.S.C. § 362(b)(2)(A)(ii) provides that the automatic stay is not applicable to the establishment or modification of domestic support obligations. Attorneys' fees awarded pursuant to Florida Statute § 61.16 are considered domestic support obligations, because they are awarded based upon a finding of need and ability to pay. Therefore, the Wife requests an order declaring that the automatic stay is inapplicable to any action that the Divorce Court would

take in establishing or modifying domestic support obligations, including, but not limited to awarding attorneys' fees under Fla. Stat. § 61.16 based upon need and ability to pay, awarding child support, and other related relief.

40.    To the extent necessary, 11 U.S.C. § 362(b)(2)(B) and (C) provide that the automatic stay does not apply to an action to collect domestic support obligations from property that is not property of the bankruptcy estate.   As set forth above, the Wife takes the position that the Marital Property is not property of the bankruptcy estate.  Further, the Debtor's income derived, and assets acquired after the filing of the petition are not property of the bankruptcy estate. Therefore, the Wife requests an order declaring the automatic stay does not apply to orders in the Divorce Court that would enforce the Debtor's domestic support obligations against the Marital Property, income derived and assets acquired after the filing of the bankruptcy petition.

41.    Further, to the extent that the trustee abandons assets and/or the Debtor successfully exempts property, which would remove said property from the estate, the automatic stay would not prevent the State Court from entering orders with respect to abandoned or exempted property. The automatic stay also does not apply to the issuance of orders requiring that the Debtor's post-petition income be withheld for the payment of domestic support obligations.

42.    Finally, 11 U.S.C. § 362(b)(2)(A)(iv) except from the automatic stay the continuation a proceeding for the dissolution of a marriage. The Wife therefore seeks declaratory relief that the automatic stay does not apply to the Divorce Court entering a Final Judgment of Dissolution of Marriage in the Divorce Case, nor any orders to enforce or modify such Final Judgment or prior orders of the Divorce Court.

**B. The Debtor's Continued Disregard for the State Court Orders, that the State Court Litigation is a Dissolution of Marriage governed entirely by Florida State Law, Failure to Comply with the Basic Requirements in Filing Bankruptcy, and the Filing of Multiple Cases Constitutes Cause to Grant the Wife Relief from the Automatic Stay to the Extent it is Applicable**

43.     Pursuant to 11 U.S.C. §362(d)(1), this Court can, for cause, grant relief from the automatic stay by terminating, annulling, modifying, or conditioning such stay.  This Court can look at the Debtor's conduct in this case, the First Voluntary Case and the Second Voluntary Case along with the Debtor's conduct in the Divorce Case to find that cause exists to grant the relief requested.

44.     Bankruptcy courts routinely lift the automatic stay to allow a state court to determine matrimonial issues. *Tarone v. Tarone (In re Tarone)*, 434 B.R. 41, 50 (Bankr. E.D.N.Y. 2010). The reason is "state courts are more familiar with the concepts of marital property and how to apply the statutory and discretionary factors that govern equitable distribution." *Id*. Fufrther, in this case, the State Court has issued various orders establishing domestic support obligations and make a partial equitable distribution award.

45.     In the Divorce Case, the Debtor has repeatedly violated the State Court's orders. The Debtor improperly attempts to seek refuge in this Court, but has failed to file the required schedules, credit counseling certificate, Statement of Financial Affairs, and other documents.

46.     In his Petition in the First Voluntary Case, the Debtor states that the purpose of filing this bankruptcy was to prevent the Wife from selling the Marital Property. [First Voluntary Case ECF #1 p.5].  In the First Voluntary Case, the Debtor failed to comply with his basic obligations for the filing of a chapter 7 bankruptcy.  Ultimately, the Court, on March 4, 2022, entered its Order Directing Clerk's Office to dismiss case pursuant to 11 U.S.C. §521(i)(1). [First Voluntary Case ECF #41].

13

47.     In this case, the *Involuntary Petition* [ECF #1] and *Refiled Involuntary Petition* [ECF # 2], the information provided for all three purported creditors appear to be in the same handwriting.

48.     Further, in comparing the handwritten portions of the *Refiled Involuntary Petition* with the handwritten Drop box filer form in the First Voluntary Petition [First Voluntary ECF # 29, p. 32], the handwriting appears to be the same.

49.     The Wife asserts that the Debtor prepared the Involuntary Petition to have it filed against himself.   Further, purported creditors Aaron Berlin and Mark Elnatan are not listed as creditors in the Debtor's First Voluntary case [First Voluntary Case ECF #29] or his Second Voluntary case [Second Voluntary Case ECF #1].

50.     Also, "Barry Kaye" is misspelled in the Debtor's First Voluntary Case [First Voluntary Case ECF #29] and Second Voluntary Case [Second Voluntary Case ECF #1].   In the First Voluntary Case and the Second Voluntary Case, the "e" is missing.  However, in the refiled Involuntary Petition, the "e" in Barry Kaye interlineated by hand. [Involuntary ECF #2].   This gives further indication that the Debtor prepared the involuntary petition ultimately filed against him.

51.     Further, the Debtor commits a false oath in both the First Voluntary Case and the Second Voluntary Case by failing to disclose the Wife and the Wife's attorney, Barry S. Franklin & Associates, P.A. as creditors.

52.     In the Second Voluntary Case, the Debtor, again, failed to comply with the basic requirements of filing a Chapter 7 bankruptcy.  On March 14, 2022, a Deficient Filing Chapter 7 Notice was filed.   [Second Voluntary Case ECF #6].

53.    All three bankruptcy cases were filed in a bad faith and to, improperly, prevent the sale of the Marital Property that is not property of the bankruptcy estate and to unnecessarily delay and frustrate the Divorce Case.

**C.  Request for Prospective Stay Relief**

54.    The Wife requests prospective stay relief so that in the event that the Debtor files another bankruptcy, the automatic stay will not apply to the Divorce Case or the Marital Property.

**D.  Request for Waiver of Fourteen Day Stay under Fed. R. Bankr. P. 4001(a)(3)**

55.    The Wife also requests a waiver of the 14-day stay under Fed. R. Bankr. P. 4001(a)(3), to allow the Wife to immediately proceed with the Divorce Case and take all necessary actions in the Divorce Case.  This relief is specifically needed because there is a sale of the Marital Property with a pending closing date, which may be technically past due prior to the hearing on this Motion.

WHEREFORE, the Wife requests that this Court enter an order in the form attached to the motion: (i) granting this Motion; (ii) declaring that the Marital Property is not property of the estate and not subject to the automatic stay; (iii) declaring that the automatic stay does not apply to the acts in the Divorce Case set forth above; (iv) granting relief from the automatic stay, to the extent applicable, to allow the Divorce Court to enter all orders to enforce and finally determine all issues in the Divorce Case and/or sell the Marital Property; (v) granting prospective stay relief to the Wife with respect to the Divorce Case and/or the Marital Property; (vi) waiving the 14-day stay under Bankruptcy Rule 4001(a)(3); and (vii) granting any additional relief the Court deems just and proper.

Dated: March 18, 2022

Furr Cohen, P.A.
*Counsel for Margalit Schneorson*
2255 Glades Road, Suite 419A
Boca Raton, Florida 33431
(561)395-0500/(561)338-7532- fax

BY:   /s/ Alan R. Crane
        Alan R. Crane
        Florida Bar No.: 0963836
        Pro Hac Vice Pending
        E-mail: acrane@furrcohen.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion and Notice of Motion setting Hearing for April 12, 2022 at 10:00 AM were served electronically on the Debtor on the 18th of March 2022 at schneorsonm@gmail.com and to all parties registered to received electronic notice on this case.

Dated: March 18, 2022

FURR AND COHEN, P.A.
One Boca Place, Suite 419A
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY:___/s/ Alan R. Crane_
　　　Alan R. Crane, Esq.
　　　Florida Bar No.: 0963836
　　　Pro Hac Vice Pending
　　　E-mail: acrane@furrcohen.com

17

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman, CLERK 7/30/2019 4:30:00 PM.****

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: FMCE 17-011569 (36)

MARGALIT SCHNEORSON,
      Petitioner,

v.

MENACHEM SCHNEORSON,
      Respondent.

_____/

## ORDER FOR TEMPORARY ALIMONY SUPPORT, TEMPORARY EXCLUSIVE USE OF THE MARITAL HOME, AND TEMPORARY ATTORNEY FEES,

**THIS CAUSE** came on to be heard by the Court on Wife's Motion for Temporary Alimony, Temporary Exclusive Use of the Marital Home and Temporary Attorney's Fees. The Court reviewed the court file and considered the testimony from witnesses, documents introduced, the court having had the opportunity to evaluate and weigh the testimony presented; observe the demeanor, bearing, intelligence, frankness, credibility, and competence of each witness; the interest each witness has in the outcome of the issues presented; and the opportunity to consider the reasonableness of the testimony of the witnesses. In light of all the evidence in the case, the Court having heard/read argument of counsel, and being otherwise advised in the premises:

      **The Court Makes the Following Factual Findings**:

      Testimony over the course of two (2) days proved that the Petitioner, Margalit Schneorson (hereinafter, the Wife), is married to the Respondent, Menachem Schneorson (hereinafter, the Husband). They have been married for twenty-one (21) years, constituting a long term marriage. The Wife has no college education and has not held any meaningful employment during the marriage. The Husband has been the sole and primary provider for the family. They have one (1) child who is nineteen (19) years old.

      The Husband testified that he is fifty-two (52) years old, and he solely maintained and controlled the marital household expenses. These expenses include mortgage payments, taxes,



1

utilities, insurance and other household expenses. The Husband stated that the he is employed as a supervisor for Kosher Shaike's Catering, and the Wife is a stay at home mother.

The Wife recently became aware that the Husband took out a second mortgage on the marital home and entered into a loan modification agreement with Wells Fargo Bank on the original mortgage without her consent. The Wife testified that she asked her Husband for information on the mortgage and called the lender, but could not ascertain any information about the status of the mortgage. Records indicate that mortgage payments have been missed. The Husband testified that only one payment was missed, and this was because the bank offered a one-time skip payment financial relief based on a hurricane occurrence in South Florida. The Wife is fearful that the mortgage may be in arrears/default and may be subjected to foreclosure.

A voicemail recording from the Husband was introduced into evidence. This recording was left on the Wife's cellphone in Yiddish. A translation of this recording to English was entered into evidence. On the recording, the Husband can be heard threatening not to pay any future household related expenses.

The Court received testimony relating to the condition of the marital home as being in dire need of repair. The roof is leaking, mold and mildew has started to appear, the water to the home has been shut off for a period of time, the home's insurance has not been documented, taxes on the home are not current, and the mortgage payments have been erratic.

The Husband stated that his Wife's name was omitted from the deed to the marital home; however, her name does appear on the mortgage. While on the witness stand, the Husband agreed that not having the Wife's name on the deed is an error, and she should be placed on the deed to the marital home.

The Wife testified she sought financial assistance from a friend, Mr. Michael Cohen. Mr. Cohen has no ties to this pending litigation. He has, through his own kindness, helped the Wife in financing this litigation. She has incurred large legal bills and has neither money to finance this litigation nor support her daily living expenses.

The Wife's financial affidavit for 2018 indicates she was born on March 11, 1978. It also indicates she is working as a rental property coordinator with a present monthly gross income of $991.00; her monthly expenses total $3,575.00, leaving her with a monthly deficit of $2,584.00. She shows assets of $355,137.00 and debts of $188,132.00. The Wife found employment as a rental property coordinator after filing her petition for dissolution of marriage.

2

The Husband has not filed a financial affidavit for 2018. He filed a financial affidavit for 2017; which indicates he is employed as a supervisor for Kosher Shaike's Catering. He presently earns a monthly net income of $5,051.78, has monthly expenses of $3,545.65, and a monthly deficit of $493.87. He shows assets of $370,293.00 and debts of $368,580.00, for a total net worth of $1,713,000.00. Exhibit Number One (1) entered into evidence gives a breakdown of the house hold expenses. Some of the major monthly household expenses are: $790.00 mortgage: $300.00 in property taxes: $200.00 in electric: $140.00 in water, garbage and sewer: $50 in lawn care: $125.00 in pool maintenance: and $70.00 in cable television. The total major household expenses are one-thousand-six-hundred-seventy-five ($1,675.00) dollars.

The Husband stated that he has over $80,000.00 in credit card debt and is so financially impoverished that he has applied for, and received, government assistance in the form of food stamps. The Husband elaborated that his financial situation is so dire that he has resorted to receiving monthly cash handouts from friends so he can make his financial obligations. This stream of income has not been documented or verified by the Husband.

The Court received testimony about a property/building in Brooklyn, New York, which is not titled in the Husband's name, or his Wife's name, or their joint names, but is an asset of their marital estate. The value of this building is listed on the Husband's financials at eight-hundred-thousand dollars ($800.000.00). However, there was testimony that this property is worth well over a million dollars ($1,000,000.00).

During cross examination of the Husband, the evidence revealed that he has traveled to foreign countries for up to three (3) weeks, rented cars for transportation and dines at fine restaurants.

Through the introduction of banking records, the Wife was able to establish that even though the Husband had been receiving financial assistance from the government, he has been able to find the funds to make credit card payments on his purported debt of $80,000.00 every month until the time this Divorce Petition was filed. Bank statements show that the Husband made deposits during 2017. The Husband maintains payments or deposits on the following accounts: Wells Fargo Visa number ending in ▉ with a balance in the amount of $33,000.00; deposits and transfers with a balance of approximately $27,000.00 to a Wells Fargo banking account number ending in ▉; deposits and transfers with a balance of approximately $37,000.00 on another Wells Fargo bank account number ending in ▉, payments to his

3

Discover Card of approximately $4,000.00 on account number ending in ███; and a payment on a Barclays Card of approximately $700.00.

Although requested by the Wife and Court Ordered, the Husband never completed document production for the year 2018; therefore, the Wife was not able to analyze these documents as she was able to do for 2017.

In trying to determine the Husband's financial situation, counsel for the Wife compared it as, "akin to trying to hit a moving target." The Husband has not produced requested documents, filed a financial affidavit for 2018, or updated a financial affidavit despite repeated Court Orders to do so. He has been less than forthcoming with providing documentation that proves his worth, yet every month the Husband finds the money to satisfy his financial obligations.

**Temporary Alimony Along with Exclusive use of the Marital Home:**

The Wife petitioned for temporary alimony support along with temporary exclusive use of the marital home. The Court finds that there is an actual need for temporary alimony, and the husband has the present ability to pay. As stated in the factual basis above, this is a long term marriage in excess of 21 years, the Wife does not have a college degree, and has not worked out of the home during the marriage. The Husband has been the sole provider of all expenses incurred during the duration of this marriage. The Wife had found it untenable to stay in the marital home; so she moved out. She would not have been able to sustain herself financially if it were not for the assistance she has been receiving from a third party friend, Michael Cohen. Mr. Cohen has no relationship to the parties other than trying to assist a friend and has no legal obligation to continue this assistance.

The Husband has not provided updated financials or document production for 2018. The Court is relegated to the Husband's 2017 financial affidavit, testimony, and records introduced into evidence by the Wife, to show the Husband's income, see Shaw v. Nelson, 4 So.3d 740 (Fla. 1st DCA 2009), "where the former husband failed to present evidence that would lead to an accurate calculation of his income, the trial court properly relied on the evidence presented by the former wife." See also, Hicks v. Hicks, 948 So.2d 63, (Fla. 5th DCA 2007), "a party who fails to provide full, complete financial disclosure will not be heard to complain about the trial court's inability to make a specific calculation." The bank records introduced by the Wife reveal that there is a flow of income the Husband uses to maintain his lifestyle.

4

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman,  CLERK 7/30/2019 4:30:00 PM.****

The Court has considered the following in awarding temporary alimony:

a. The standard of living established during the marriage; the wife has been solely dependent upon the Husband and lives a modest life style.

b. The duration of the marriage; long term, twenty-one (21) years.

c. The age and the physical and emotional condition of each party; both parties appeared physically and mentally fit in court, and there is no evidence to contradict that.

d. The financial resources of each party, including the non-marital and the marital assets and liabilities distributed to each; the Wife has no college education, and did not work during the twenty-one (21) year marriage; the Husband has been the sole financial provider for the family, and the parties appear to have a financial interest in property located in Brookline New York.

e. Earning capacities, educational levels, vocational skills, and employability of the parties, and when applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment; the Wife has no college schooling. The Husband is the sole financial provider for the family;

f. The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party; The Wife was a stay at home mother and raised their child, while the Husband provided their only income.

g. The responsibilities each party will have with regard to any minor children they have in common; their only child is nineteen (19) years old and emancipated.

h. The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a nontaxable, nondeductible payment;

i. All sources of income available to either party, including income available to either party through investments of any asset held by that party; the parties appear to have a financial interest in property located in Brooklyn, New York.

j. Any other factor necessary to do equity and justice between the parties.

5

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman,  CLERK 7/30/2019 4:30:00 PM.****

The Court, after considering all of the above, temporarily awards the Wife exclusive use of the martial home and temporary alimony payments of two-thousand ($2,000.00) dollars a month, nunc pro tunc to July 2017, the day that this litigation commenced, and two (2) years of retroactive payments totaling forty-eight-thousand ($48,000.00) dollars.  The retroactive alimony payments are to be made at an additional one thousand ($1,000.00) dollars a month. The total monthly payments are three-thousand ($3,000.00) dollars. Once the past due alimony of forty-eight-thousand ($48,000.00) dollars is paid in full, alimony payments are to resume at two-thousand ($2,000.00) dollars a month. This temporary alimony payment and temporary exclusive use of the marital home is based on the Wife showing a need which included the entire household expenses, including: mortgage payments, taxes, utilities, insurance, and normal day to day living expenses. The Wife has been heavily indebted to a third party, Michael Cohen, since filing her petition for dissolution of marriage in July 2017. He has no obligation to keep her financially afloat while she awaits pendent lite relief, Bromante v. Bromante, 577 So.2d 622 (Fla. 1st DCA 1991). This temporary award enables the Wife to maintain the life style that she had during this marriage. Melton v. Melton, 79 So.3d 154 (Fla. 2 DCA 2012); Martinez v. Martinez, 228 So.3d 164 (Fla. 2 DCA 2017).

The Husband's continued erratic payments of the household expenses, along with his threats to stop payments of the household expenses, further supports this Court's award of temporary exclusive use of the marital home to the Wife and awarding her temporary alimony. The Court's Order will provide equity and justice by making sure that the Wife may maintain her modest life style, while additionally providing that the marital home is properly maintained.

**Temporary Attorney Fees:**

The Wife has incurred attorney's fees largely due in part to the Husband's failure to respond to Court Orders. The vast majority of the Motions filed by the Wife have been granted, as they were necessitated by the inactions of the Husband thus generating higher legal costs.

Trying to ascertain the Husband's financial status has not been an easy task. The Court hopes to get a better understanding in future hearings of the Husband's finances. At this time, relying on the Husband's 2017 financials, the introduction of the Husband's bank records by the Wife, and the testimony provided, the Court finds that the Husband has the present ability to pay the Wife's attorney's fees. The Wife has a need for such contribution. See, Jooste v. Jooste 44

6

Fla. L. Weekly D1242 (Fla. 4th DCA May 8, 2019). It is not necessary that one spouse be completely unable to pay attorney's fees for the trial court to require the other spouse to pay those fees. See, <u>Canakaris v Canakaris</u>, 382 So.2d 1197 (Fla. S.Ct. 1980).

There exists a financial disparity between the Husband and Wife. The Husband has been the sole provider for all finances during their twenty-one (21) years of marriage. The Wife has never worked out of the home during this time period and has no formal college education.

As of March 5, 2019, the evidence provided to this Court is that the Wife has incurred legal fees. Exhibit number five (5) in evidence is a listing of the legal fees charged and Exhibit number seven (7) is a complete breakdown of the billing statement for legal fees. The Wife is seeking an award of $72,811.00 in legal fees.

The Court, at this time finds an entitlement to legal fees, and awards a temporary/partial payment of legal fees of $10,000.00. Attached to this Order is a scheduling Order on petitioner's request for award of additional attorney fees, which the parties are to follow.

This Court retains and reserves jurisdiction of this case for the purpose of enforcing and modifying the terms of this Order and entering further Orders as may be necessary.

**ORDERED:**

The Wife's Motion for Temporary Alimony is **GRANTED**. The Court awards the Wife $2,000.00 a month, nun pro tunc to July 2017, totaling two (2) years of back payment amounting to $48,000.00. The Husband is to pay $2,000.00 a month, with an additional payment of $1,000.00 a month to make up for back payments owed. These payments total $3,000.00 a month in payments from Husband to Wife. These payments shall be made monthly until paid up on the $48,000.00 owed, then payments of $2,000.00 per month will continue.

The Wife's Motion for Temporary Exclusive use of the marital home is **GRANTED**. The Husband will have thirty (30) days from the date of this Order to vacate the marital home.

The Wife's Motion for Temporary Attorney's Fees, the Court finds **ENTITLEMENT**, and awards a temporary/partial payment at this time of $10,000.00 in legal fees to be paid for by the Husband.   Attached is the Scheduling Order on Petitioner's request for additional attorney's fees that the parties are to follow.

7

**** FILED: BROWARD COUNTY, FL  Brenda D. Forman,  CLERK 7/30/2019 4:30:00 PM.****

**ORDERED** in chambers in Broward County, Ft. Lauderdale, Florida on the ___30___

day of _____July_____, 2019.

_____
Peter Holden, Circuit Court Judge

cc:    All parties of record

8